IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY AND ANN DOLAN, : <br> 407 East Elm Street : <br> Hazleton, PA 18201, : <br> : <br> ESTATE OF JEAN DOLAN, c/o, : <br> MARYBETH DOLAN, Executrix, : <br> 7314 Sportsman Drive : <br> Falls Church, VA 22043, : <br> : <br> RAYMOND AND ELIZABETH : <br> FLANNERY, : <br> 8 Pine Street : <br> Ashland, PA 17921, : <br> : <br> ROBERT AND LINDA : <br> GRUNER, : <br> 16 Breeze Way : <br> Shavertown, PA 18708, : <br> : <br> VIRGINIA HETHERINGTON, : <br> 125 Wolf Road : <br> Ringtown, PA 17967, : <br> : <br> and : <br> : <br> CARMEN FIERRO, : <br> 121 Providence Road : <br> Hazle Township, PA 18202, : <br> : <br>          Plaintiffs, : <br>   v. : <br> : <br> PHL VARIABLE INSURANCE : <br> COMPANY, : <br> One American Row : <br> Hartford, CT 06102, : <br> : | CIVIL ACTION NO. _____ <br><br> Jury Trial Demanded |

| | |
|---|---|
| FORETHOUGHT LIFE<br>INSURANCE COMPANY,<br>One Forethought Center<br>Batesville, IN 47006, | :<br>:<br>:<br>:<br>: |
| NORTH AMERICAN COMPANY<br>FOR LIFE AND HEALTH<br>INSURANCE,<br>525 W. Van Buren St.<br>Chicago, IL 60607, | :<br>:<br>:<br>:<br>: |
| and | : |
| ALLIANZ LIFE INSURANCE<br>COMPANY OF NORTH<br>AMERICA,<br>5701 Golden Hills Drive<br>Minneapolis, MN 55416-1297, | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

## COMPLAINT

This action is brought by Timothy and Ann Dolan, the Estate of Jean Dolan, c/o, Marybeth Dolan, Raymond and Elizabeth Flannery, Robert and Linda Gruner, Virginia Hetherington, and Carmen Fierro (collectively "Plaintiffs") seeking monetary relief from and against Forethought Life Insurance Company ("Forethought"), PHL Variable Insurance Company ("PHL"), North American Company for Life and Health Insurance ("North American"), and Allianz Life Insurance Company of North America ("Allianz") (collectively, Defendants") and it arises out of the theft of proceeds from the sale of annuities issued by

2

Defendants' authorized representative, Joseph Hyduk ("Hyduk"), and his firm, BNA Financial Services, Inc. ("BNA").

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2. This Court has personal jurisdiction over Defendants pursuant to U.S. Const. amend. XIV, § 1 and 42 Pa. C.S.A. §5322(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as transactions or occurrences giving rise to the claims took place in this district, and parties reside and conduct business within the jurisdiction of this Court.

## PARTIES

4. Plaintiffs incorporate the preceding paragraphs as if they were fully set forth at length herein.

5. Plaintiffs Timothy and Ann Dolan are Pennsylvania citizens with a domicile at 407 East Elm Street, Hazleton, PA 18201.

6. Plaintiff Estate of Jean Dolan, c/o of Marybeth Dolan, Executrix, is a Pennsylvania citizen pursuant to 28 U.S.C. § 1332(c)(2) because she was a

Pennsylvania citizen at the time of her death with a domicile at 407 East Elm Street, Hazleton, PA 18201.

7. Plaintiffs Raymond and Elizabeth Flannery are Pennsylvania citizens with a domicile at 8 Pine Street, Ashland, PA 17921.

8. Plaintiffs Robert and Linda Gruner are Pennsylvania citizens with a domicile at 16 Breeze Way, Shavertown, PA 18708.

9. Plaintiff Virginia Hetherington is a Pennsylvania citizen with a domicile at 125 Wolf Road, Ringtown, PA 17967.

10. Plaintiff Carmen Fierro is a Pennsylvania citizen with a domicile at 121 Providence Road, Hazle Township, PA 18202.

11. Defendant PHL Variable Insurance Company is believed to be a lawfully organized and duly registered Connecticut corporation with its principal place of business at One American Row, Hartford, CT 06102.

12. Defendant Forethought Life Insurance Company is believed to be a lawfully organized and duly registered Indiana corporation with its principal place of business at One Forethought Center, Batesville, IN 47006.

13. Defendant North American Company for Life and Health Insurance is believed to be a lawfully organized and duly registered Iowa corporation with its principal place of business at 525 W. Van Buren St., Chicago, IL 60607.

14. Defendant Allianz Life Insurance Company of North America is believed to be a lawfully organized and duly registered Minnesota corporation with its principal place of business at 5701 Golden Hills Drive, Minneapolis, MN 55416.

## BACKGROUND FACTS

15. Plaintiffs incorporate the preceding paragraphs as if they were fully set forth at length herein.

16. Plaintiffs are victims of a scheme perpetrated by Hyduk and his company, BNA, while Hyduk was acting as a registered and authorized agent of Defendants, marketing, selling and exchanging their products with their knowledge and in accordance with the representations in their written materials and disclosures.

17. Forethought is a financial services company with life insurance and annuity operations throughout the United States.

18. Forethought is a subsidiary of Global Atlantic Financial Group Limited, a financial services company focused on the annuity, life insurance, and reinsurance markets.

19. PHL is a life insurance company offering life insurance and annuity products through agents and financial advisors in the United States.

20. PHL is a subsidiary of the Phoenix Companies, Inc.

21. North American is a privately held company that specializes in the annuity and life insurance markets.

22. North American is a member of the Sammons Financial Group.

23. Allianz is a leading provider of retirement and protection solutions, including fixed and variable annuities, and life insurance for individuals sold through a network of financial professionals.

24. Hyduk was one of Defendants' registered representatives/agents at all times relevant to the causes of action contained herein.

25. Specifically, in or about June 2009, Hyduk became an authorized representative of Forethought pursuant to the terms of an Annuity Selling Agreement.

26. Under his contractual arrangement with Forethought, Hyduk agreed to procure applications for individual and group annuity products issued by Forethought.

27. Similarly, Hyduk and BNA became authorized agents for PHL in or about November 2010 pursuant to the terms of separate Third Party Marketing Agreements.

28. Pursuant to the terms of their agreements with PHL, Hyduk and BNA agreed, among other undertakings, to: (a) actively promote the sale of Phoenix

Products; (b) include Phoenix Products on their product lists; and (c) feature Phoenix Products in marketing campaigns.

29. Based on information and belief, Hyduk had similar contractual arrangements with North American and Allianz.

30. Hyduk separately targeted each Plaintiff, held himself out as an agent of Defendants, and specifically pitched each Plaintiff on investment opportunities through Defendants.

31. Hyduk explained to Plaintiffs that their purchase of annuities with Defendants would be a safe investment option without risk to principal.

32. Hyduk further explained to Plaintiffs that the minimum guaranteed return on these annuities would be one percent (1.00%).

33. To assist in convincing Plaintiffs to purchase annuities issued by Defendants, Hyduk would often present Plaintiffs with *pro forma* statements, prepared by Defendants, indicating the projected returns Plaintiffs would receive on their investments.

34. These statements aided in convincing Plaintiffs to rollover their existing investments to products issued by Defendants.

35. To make purchases of annuities issued by Defendants, Plaintiffs were required to complete applications in order to obtain authorization to purchase these products.

36. After having their applications approved, Plaintiffs, through Hyduk, would purchase annuities issued by Defendants.

37. Plaintiffs' purchase of annuities issued by Defendants often occurred through the rolling over funds from annuities or similar financial products owned by Plaintiffs that were issued by other institutions.

38. When Plaintiffs purchased annuities issued by Defendants, the purchases would be accompanied by rollover forms identifying the current plan information and account being transferred.

39. Not long after Plaintiffs purchased annuities issued by Defendants, Hyduk manipulated Plaintiffs into selling their investments for his own gain under suspicious and alarming circumstances.

40. Often, Hyduk would have his clients sign withdrawal forms to sell their annuities issued by Defendants, which withdrawals would entail substantial surrender fees and penalties, and Defendants would then issue checks to the annuity holders, such as Plaintiffs, retaining the fees applicable to the early withdrawals.

41. Additionally, based on information and belief, Hyduk, on occasion, would forge Plaintiffs' signatures on withdrawal forms in order to have Defendants issue checks to his victims.

42. The withdrawal forms submitted by Plaintiffs to Defendants frequently were usually not accompanied by rollover forms requesting their funds be transferred to different financial institutions; rather, these requests were for cash payments for the value of the contracts.

43. Hyduk's rate of early withdrawals was unusually high and should have put Defendants on notice that Hyduk was not operating according to industry standards or in the best interest of their customers.

44. The withdrawals generally occurred within the first few years following the purchase of Defendants' annuities, thus causing Plaintiffs to incur substantial surrender fees in connection with these transactions.

45. Plaintiffs, after receiving their refund checks (for an amount significantly less than the contract value based on the hefty surrender fees), would then give checks to Hyduk for purchase of alternative investment products, usually the other Defendants' product.

46. Hyduk did not reinvest those funds as promised.

47. Instead, Hyduk kept those funds for his own benefit.

48. Hyduk failed to inform Plaintiffs that he was stealing or otherwise misappropriating their money for his own use.

49. Hyduk was Defendants' agent, using Defendants' resources, reputation, materials, and facilities to accomplish this theft.

50. Specifically, Hyduk relied on marketing materials prepared by Defendants to entice clients, including Plaintiffs, to conduct business with Defendants and to purchase Defendants' products.

51. Defendants profited and otherwise benefited from Hyduk's fraud, as he sold many of Defendants' financial products to his victims and allowed them to realize fees and profits that they would not otherwise have obtained.

52. Hyduk described Defendants and Defendants' financial products as safe, predictable, and conservative investment opportunities for Plaintiffs.

53. Upon information and belief, portions of the money Hyduk plundered from Plaintiffs and others were used to purchase Defendants' financial products and to otherwise promote and advance Defendants and Defendants' interests.

54. Hyduk had apparent authority to act and speak for Defendants.

55. Hyduk's misconduct occurred during the course of his agency relationship with Defendants.

56. As explained, Defendants ignored countless "red flags" that served as warning signals that a fraud was afoot.

57. Specifically, Defendants ignored numerous transactions where the sale of annuities by Hyduk's clients, including Plaintiffs, resulted in substantial surrender charges.

58.     The sheer number of transactions in which Hyduk's clients incurred substantial surrender charges was uncommon, suspicious, and should have caused Defendants to inquire about the services that were being provided by their agent.

59.     Defendants also disregarded that Hyduk's clients' repeated withdrawal requests were often unaccompanied by rollover forms authorizing the transfer of funds to purchase different investments offered by other financial service providers.

60.     Having had their products purchased by Plaintiffs with funds rolled over from other investments (and having been accompanied by such documentation), Hyduk's clients' repeated requests for the cash surrender value of their contracts should have alerted Defendants of the need to explore the nature and circumstances of these suspicious transactions.

61.     The volume of transactions in which Hyduk's victims requested withdrawals in the absence of rollover forms was atypical and signaled a likelihood of criminal activity.

62.     Yet, despite the absence of rollover information, Defendants and their respective compliance departments failed to investigate Hyduk or otherwise question the provision of services by their authorized agent.

11

63. Additionally, as stated on information and belief, the forgeries on a number of withdrawal forms was apparent and was easily identifiable by Defendants and their compliance departments.

64. Hyduk also converted withdrawn funds to his own use by having Plaintiffs and other customers endorse checks for the funds directly to him, which cancelled checks put Defendants on notice that Hyduk was misusing his authority as their agent and diverting funds payable to the insureds.

65. Defendants, however, ignored the clear signs that the withdrawal forms were not signed by the annuity holder, and they failed to conduct any due diligence as to the conduct of their agent and/or the circumstances of these withdrawal requests.

66. Furthermore, Defendant PHL failed to conduct any investigation of Hyduk's conduct even after being directly informed of wrongdoing.

67. Specifically, on January 29, 2013, Michael Sasso contacted PHL's compliance department with information that Hyduk was manipulating Sasso's account and withdrawing Sasso's money without his knowledge or consent.

68. Yet, the obviousness of this "red flag" notwithstanding, PHL did nothing and conducted no investigation into the affairs or conduct of Hyduk.

69. Moreover, unbeknownst to Plaintiffs, Hyduk was also turned into the Insurance Department for investigation into questionable activity.

70. Defendants were aware of the complaint to the Insurance Department, but ignored this "red flag" and continued their relationship with Hyduk without further review.

71. Although numerous warning signs existed, Defendants failed to conduct even minimal due diligence as to Hyduk's operations and assets.

72. Defendants failed to audit or inquire about the investment advice Hyduk was offering to Plaintiffs and others.

73. All of Plaintiffs' investments were made through Hyduk and, thus, through Defendants' offices and their personnel.

74. In making their investments, Plaintiffs believed Defendants were a sponsor, supervisor, affiliate, endorser, or facilitator of each investment opportunity.

75. Most of the investment opportunities Hyduk offered to Plaintiffs and others during the course of his relationships with Defendants were their financial products.

76. Defendants neglected to maintain basic compliance mechanisms and procedures, such as comprehensive reviews and testing, employed throughout the investment advising industry, that are designed to identify and prevent the type of fraud and self-dealing that occurred here.

77. Hyduk's theft of Plaintiffs' investments would have been prevented and the harm accruing to Plaintiffs disrupted, but for Defendants' failures.

78. Defendants' reckless or willful ignorance of and failure to disrupt Hyduk's fraud constitutes an extreme departure from standards of ordinary care.

79. The conduct at issue here occurred in the course of Hyduk's agency relationship.

80. Hyduk's actions were not to the detriment of Defendants, but rather resulted in a benefit or benefits to Defendants. Specifically, Hyduk sold Defendants' financial products to his duped investors and promoted Defendants and Defendants' financial products to Plaintiffs and others.

81. Under governing principles of fair risk-allocation, including the affordance of appropriate protection to those who transact business with investment advisers, Hyduk's misconduct is imputed to Defendants and Defendants are responsible and liable for harms committed by Hyduk.

82. On October 16, 2013, Hyduk's office was raided by the Federal Bureau of Investigation.

83. PHL, however, waited approximately six months after this raid before it terminated its relationship with Hyduk.

84. Charges were filed against Hyduk in the United States District Court for the Middle District of Pennsylvania on or about August 4, 2014.

85. Hyduk pled guilty to charges for tax evasion and wire fraud in the Middle District of Pennsylvania in or about November 2014.

86. Hyduk was sentenced to more than five years in prison on July 30, 2015.

## COUNT I

### VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (UTPCPA)

87. Plaintiffs incorporate the preceding paragraphs as if they were fully set forth at length herein.

88. Plaintiffs are "persons" within the meaning of the UTPCPA, and as defined by 73 P.S. § 201-2(2).

89. The conduct described above took place in the Commonwealth of Pennsylvania.

90. The foregoing actions of Defendants, as described in detail above, constitute unfair and deceptive acts and practices in the conduct of trade or commerce that are unethical, unscrupulous, offensive to public policy, and in direct violation of the UTPCPA.

91. Plaintiffs were purchasers of commercial services, specifically of investment advisory services and products from Defendants.

92. Defendants, through their agent, employed unfair or deceptive acts or practices within the meaning of 73 Pa. C.S.A. §§ 201-2 and 201-3. Such unfair or

deceptive acts or practices include, but are not limited to: (a) false representations and material nondisclosures as to the fate, potential, and condition of Plaintiffs' investments; (b) false representations and material nondisclosures as to the performance of their investments; and (c) false representations and material nondisclosures as to the investment philosophy, operations, and objectives of Defendants.

93. The misrepresentations, omissions, deceptions, and unfair conduct of Defendants, through their agent, were likely to deceive Plaintiffs and cause them to misunderstand the nature of their investments and the potential for total loss of their money.

94. Defendants, through their agent, intended Plaintiffs to rely on their misrepresentations, omissions, deceptions, and unfair conduct.

95. Defendants' actions, committed through their agent, of stealing Plaintiffs' money constitute theft and fraud in the sale of annuities.

96. As a direct and proximate result of Defendants' unfair and deceptive acts, Plaintiffs have suffered damage to their business and property and are entitled to an award of damages as detailed in the *ad damnum* clause below.

## COUNT II

### BREACH OF FIDUCIARY DUTIES

97. Plaintiffs incorporate the preceding paragraphs as if they were fully set forth at length herein.

98. Defendants owed fiduciary duties of loyalty, due care, independence, candor, good faith, and fair dealing to Plaintiffs.

99. Defendants owed Plaintiffs a duty to maximize, and not to undermine, subvert, convert, squander, steal, and dissipate Plaintiffs' investments.

100. Defendants owed Plaintiffs a duty to not deal with them in an unfair, dishonest, or otherwise improper manner.

101. Defendants breached their foregoing fiduciary duties to Plaintiffs by intentionally and recklessly misleading them, and by permitting their authorized representative to steal their money.

102. As a direct and proximate result of Defendants' breaches of fiduciary duties, as described above, Plaintiffs have suffered damage to their business and property.

## COUNT III

### NEGLIGENCE

103. Plaintiffs incorporate the preceding paragraphs as if they were fully set forth at length herein.

104. Defendants failed to act reasonably and responsibly in entering into a contractual arrangement whereby they permitted Hyduk to operate in a position of trust with respect to the funds and investment decisions of Plaintiffs.

105. Defendants failed to properly engage and supervise Hyduk.

106. Defendants failed to implement a system of checks and approvals with respect to the manner in which Hyduk dealt with their insureds.

107. Defendants failed in inquire into or investigate the frequency with which Hyduk customers made early withdrawals or changed their investment directives.

**WHEREFORE**, Plaintiffs Timothy and Ann Dolan, the Estate of Jean Dolan, c/o, Marybeth Dolan, Executrix, Raymond and Elizabeth Flannery, Robert and Linda Gruner, Virginia Hetherington, and Carmen Fierro respectfully request that this Honorable Court enter judgment against Forethought Life Insurance Company, PHL Variable Insurance Company, North American Company for Life and Health Insurance , and Allianz Life Insurance Company of North America, and in favor of Plaintiffs, in the form of compensatory damages, non-economic damages, treble damages and punitive damages, where appropriate, together with interest (including prejudgment interest), costs of prosecuting this law suit, reasonable attorneys' fees, and  such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby respectfully demands a jury trial pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(a).

Respectfully submitted,

s/John G. Dean
John G. Dean
**ELLIOTT GREENLEAF & DEAN**
39 Public Square, Suite 1000
Wilkes-Barre, PA 18701
(570) 371-5290

Thomas L. Kennedy
Kennedy and Lucadamo, P.C.
200 West Chapel Street
Hazelton, PA 18201
(570) 459-2440

*Attorney for Plaintiffs*

DATED: October 13, 2015