**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TIMOTHY DOLAN, *et al.*,

    Plaintiffs,

    v.

PHL VARIABLE INSURANCE CO., *et al*.,

    Defendants.

CIVIL ACTION NO. 3:15-cv-01987

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me are three motions to dismiss Plaintiffs' Complaint (Doc. 1) filed by Defendants Forethought Life Insurance Company ("Forethought") (Doc. 15), PHL Variable Insurance Company ("PHL") (Doc. 33), and Allianz Life Insurance Company of North America ("Allianz") (Doc. 45) (collectively "Defendants").

This case arises out of a fraudulent scheme conducted by an independent insurance broker named Joseph S. Hyduk ("Hyduk") through his company, BNA Financial Services ("BNA"). Plaintiffs Timothy and Ann Dolan, the Estate of Jean Dolan, Raymond and Elizabeth Flannery, Robert and Linda Gruner, Virginia Hetherington, and Carmen Fierro (collectively "Plaintiffs") are now seeking monetary relief from Defendants, four insurance companies, based on Hyduk's conduct.[1]

For the reasons that follow, Defendants' motions to dismiss the Complaint will be granted in part, and denied in part.

### **I. Factual Background**

The facts, as set forth in Plaintiffs' Complaint (Doc. 1), are as follows.

Plaintiffs are alleged to be victims of a scheme perpetrated by Hyduk and his company,

---

[1] Although Plaintiffs sued four Defendants, only the above-mentioned three filed their respective motions to dismiss. The fourth Defendant, North American Company for Life and Health Insurance, answered the Complaint (Doc. 20).

BNA, while Hyduk was purportedly acting as a registered and authorized agent of Defendants, marketing, selling and exchanging their products.

Specifically, in June 2009, Hyduk allegedly became an authorized representative of Defendant Forethought pursuant to the terms of an Annuity Selling Agreement. Under his contractual arrangement with Forethought, Hyduk agreed to procure applications for individual and group annuity products issued by Forethought. Similarly, Hyduk and BNA became authorized agents for Defendant PHL in November 2010 pursuant to the terms of separate Third Party Marketing Agreements. Hyduk and BNA agreed, among other things, to actively promote the sale of PHL Products, include PHL Products on their product lists, and feature PHL Products in marketing campaigns. Based on information and belief, Plaintiffs allege that Hyduk had similar contractual arrangements with Defendants North American and Allianz.

Plaintiffs aver that Hyduk separately targeted each Plaintiff, held himself out as an agent of Defendants, and specifically presented each Plaintiff with investment opportunities with Defendants. Hyduk explained to Plaintiffs that their purchase of annuities with Defendants would be a safe investment option without risk to principal. Hyduk further explained to Plaintiffs that the minimum guaranteed return on these annuities would be one percent. Plaintiffs allege that to convince them to purchase annuities issued by Defendants, Hyduk would often present Plaintiffs with *pro forma* statements prepared by Defendants, indicating the projected returns Plaintiffs would receive on their investment. Those statements allegedly helped in convincing Plaintiffs to rollover their existing investments to products issued by Defendants.

To make purchases of annuities issued by Defendants, Plaintiffs were required to complete applications in order to obtain authorization to purchase these products. After

having their applications approved, Plaintiffs, through Hyduk, would purchase annuities issued by Defendants. These purchases would be accompanied by rollover forms identifying the current plan information and the account being transferred.

Soon after Plaintiffs purchased their annuities, Hyduk manipulated Plaintiffs into selling their investments for his own gain under suspicious and alarming circumstances. Hyduk had his clients take withdrawals subject to substantial fees and penalties from their annuities issued by Defendants and Defendants would then issue checks to the annuity holders, retaining the fees applicable to the early withdrawals. After receiving the refund checks, instead of purchasing alternative investment products, Hyduk would keep those funds for his own benefit.

Plaintiffs claim that Hyduk's rate of early withdrawals was unusually high and should have put Defendants on notice that Hyduk was not operating according to industry standards or in the best interest of their customers. The withdrawals generally occurred within the first few years following the purchase of Defendants' annuities, thus causing Plaintiffs to incur substantial surrender fees in connection with these transactions.

According to Plaintiffs, Hyduk had apparent authority to act and speak for Defendants and relied on marketing materials prepared by Defendants to entice clients to purchase Defendants' products. Defendants purportedly profited and otherwise benefited from Hyduk's fraud, as he sold many of Defendants' financial products to his victims and allowed them to realize fees and profits that they would not otherwise have obtained.

Plaintiffs further allege that Defendants ignored countless "red flags" that served as warning signals that a fraud was afoot. Specifically, Plaintiffs aver that Defendants ignored numerous transactions where the sale of annuities by Hyduk's clients resulted in substantial surrender charges. Defendants also purportedly disregarded that Hyduk's clients' repeated

withdrawal requests were often unaccompanied by rollover forms authorizing the transfer of funds to purchase different investments offered by other financial service providers. Hyduk's clients' repeated requests for the cash surrender value of their contracts should have alerted Defendants of the need to explore the nature and circumstances of these suspicious transactions. According to Plaintiffs, the volume of transactions in which Hyduk's victims requested withdrawals in the absence of rollover forms was atypical and signaled a likelihood of criminal activity. Yet, despite the absence of rollover information, Defendants and their respective compliance departments failed to investigate Hyduk or otherwise question the provision of services by their authorized agent.

Hyduk converted the withdrawn funds for his own use by asking Plaintiffs to endorse checks for the funds directly to him. Defendants, however, allegedly ignored the fact that the withdrawal forms were not signed by the annuity holder, and failed to conduct any due diligence as to the conduct of Hyduk and the circumstances of these withdrawal requests.

In sum, Plaintiffs aver that, although numerous warning signs existed, Defendants failed to conduct even minimal due diligence as to Hyduk's operations and assets. Defendants failed to audit or inquire about the investment advice Hyduk was offering to Plaintiffs and others. Defendants also neglected to maintain basic compliance mechanisms and procedures, such as comprehensive reviews and testing, employed throughout the investment advising industry to identify and prevent the type of fraud and self-dealing that allegedly occurred here.

On October 16, 2013, Hyduk's company was raided by the Federal Bureau of Investigation. On August 4, 2014, charges were filed against Hyduk in this Court.[2]

---

[2] *See* United States v. Hyduk, No. 3:14-cr-00189 (M.D. Pa., 2014):
   It was part of the scheme that HYDUK would improperly divert funds from his

Subsequently, Hyduk pled guilty to tax evasion and wire fraud. On July 30, 2015, he was sentenced to more than five years in prison

In light of the foregoing events, on November 13, 2015, Plaintiffs filed the instant three-count Complaint (Doc. 1) against Defendants.

The Complaint contains the following claims: (1) Count I alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Act; (2) Count II alleging a breach of fiduciary duties by Defendants; and (3) Count III alleging negligence.

Defendants have moved to dismiss all claims. (Docs. 15, 33, 45). The motions have been fully briefed and are now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement

---

clients to himself without his clients' knowledge or consent. The majority of the diverted funds was from clients who intended the money to be rolled-over into different investments. HYDUK instructed them to make their checks payable to BNA Financial instead of the actual new investment company and deposited the funds into his own account and used the money for his personal benefit. . . .

Doc 1, at ¶ 3.

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants advance a series of arguments seeking dismissal of the Complaint in its entirety. For the reasons that follow, their motions will be granted in part and denied in part.

**A.    Count I - Pennsylvania's Unfair Trade Practices and Consumer Protection Act**

Defendant Forethought first argues that "dismissal is warranted under Federal Rule of Civil Procedure 9(b)" because the allegations sound in fraud. (Doc. 16, at 9).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As the Third Circuit has explained, "[a] plaintiff alleging fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any

newspaper story - that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (citation and quotation marks omitted). In other words, a plaintiff may satisfy this requirement by pleading "the date, time and place" of the alleged fraud or deception, or by "otherwise inject[ing] precision or some measure of substantiation" into the allegation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955 (2007)). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-24  (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

The heightened specificity required by Rule 9(b) extends to the pleading of all claims that "sound in fraud." *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 372 (D.N.J. 2015). As the Third Circuit has explained, Rule 9(b) applies "not only to fraud actions under federal statutes, but to fraud claims based on state law." *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir.1983). Here, this includes Plaintiffs' claims alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201.

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage

in unfair or deceptive acts or practices. *Id.* at. § 201-3. Although there is no clear guidance on how to treat claims under the UTPCPL for the purposes of a 12(b)(6) motion in light of rule 9(b), I am guided here by courts which have required plaintiffs to satisfy the particularity requirement of Rule 9(b) in cases involving similar state unfair trade practices and consumer protection statutes. *See, e.g., U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581 (E.D. Pa. 2014) (New Jersey Consumer Fraud Act); *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430 (D. Conn. 2015) (Connecticut Unfair Trade Practices Act); *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342 (S.D.N.Y. 2015) (California Unfair Competition Law or False Advertising Law); *Osness v. Lasko Prod., Inc.*, 868 F. Supp. 2d 402 (E.D. Pa. 2012) (Illinois Consumer Fraud Act); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557 (D. Md. 2012) (Maryland Consumer Protection Act); *Sadler v. Pella Corp.*, 146 F. Supp. 3d 734 (D.S.C. 2015) (Illinois Consumer Fraud and Deceptive Business Practices Act).[3]

Applying these standards to the case before me, I find that plaintiffs have failed to

---

[3] I am, of course, mindful of cases from our Circuit which hold that if a plaintiff alleges only *deceptive* conduct under the UTPCPL, he need not meet the heightened pleading standard. *Christopher v. First Mut. Corp.*, 2006 WL 166566, at *3 (E.D.Pa. Jan. 20, 2006); *see also Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) (concluding that a plaintiff alleging fraudulent conduct under the UTPCPL must meet Rule 9(b)'s particularity requirement, whereas a plaintiff alleging deceptive conduct under the statute's "catchall provision" need not). Here, Plaintiffs' allegations go beyond mere claims of deceptive conduct and plainly touch upon allegations of fraud. The Complaint alleges that "Defendants profited and otherwise benefitted from Hyduk's fraud," (Doc. 1, at ¶ 51), ignored "warning signals that a fraud was afoot," (¶ 5), and willfully ignored and failed "to disrupt Hyduk's fraud." (¶ 78) Plaintiffs allege that Hyduk "plundered" money from the plaintiffs, (¶ 53), "targeted" them, (¶ 30), "duped" them, (¶ 80), and "manipulated" them (¶ 39), while forging signatures (¶¶ 41, 63) and "keeping funds for his own benefit" rather than investing them as he said he did. (¶¶ 46-47) This "theft" (¶¶ 49, 77) and conversion (¶ 64) eventually led to a guilty plea to "tax evasion and wire fraud." (¶ 85). As such, Plaintiffs' reliance on *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503 (E.D. Pa. 2010) is inapposite.

comply with the pleading requirements of Rule 9(b).

Without a doubt, Hyduk and his company engaged in criminal conduct. However, a mere discussion of his conduct and blanket allegations alleging liability by Defendants does not plead with particularity why each and every Defendant is responsible for every action taken by Hyduk regarding every Plaintiff, or exactly what acts or omissions each Defendant allegedly committed in ignoring or failing to discover Hyduk's fraud. The Complaint does not identify what proceeds were taken from which Defendant or which Defendant's annuity, nor does the Complaint identify which Defendant provided a *pro forma* statement that convinced which Plaintiff to rollover which existing investment into which Defendant, nor which funds were withdrawn with substantial penalties from which Defendants, and which of Defendants' funds Hyduk kept for his own benefit. There is no attempt to set forth facts that would put each Defendant on fair notice of the individual conduct that purportedly gives rise to a claim against it.

Such sweeping, undifferentiated allegations do not satisfy Rule 9(b). As numerous courts have held, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir.1994); *see also Brooks v. Blue Cross and Blue Shield of Florida, Inc*., 116 F.3d 1364, 1381 (11th Cir.1997) ("Plaintiffs have simply 'lumped together' all of the Defendants in their allegations of fraud") (quoting *Vicom*, 20 F.3d at 778); *Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants' "); *Sears v.*

*Likens*, 912 F.2d 889, 893 ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient"); *In re Crude Oil Commodity Litigation*, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement"); *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005) ("Neither allegations of ability to control or lumped-together accusations of wrongdoing by undifferentiated groups of defendants, is sufficient to satisfy Rule 9(b)"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)"); *Alnwick v. European Micro Holdings, Inc.*, 281 F.Supp.2d 629, 640 (S.D.N.Y. Sept. 15, 2003) (Rule 9(b) standards were not satisfied were complaint lumped several defendants together and "fail[ed] to specify what each defendant said").

Here, Plaintiffs do precisely what the above authority prohibits. In the Complaint, one Defendant insurance company's alleged actions are indistinguishable from those of the other Defendant insurance companies. All Defendants are alleged to have committed all alleged acts against all Plaintiffs with regard to all annuities and *pro forma* marketing materials. In particular, throughout the Complaint, all six Plaintiffs and all four Defendants are referred to in the collective, and all "Defendants" are alleged to have taken the same actions against all "Plaintiffs." Although it is alleged that Hyduk "separately targeted each Plaintiff" and made pitches to each (Doc 1, at ¶ 30), there is no indication what misrepresentations were allegedly made to any particular Plaintiff on behalf of which

11

Defendant, or when, where and how the misrepresentations occurred.

This is the very definition of improper "lumping together" of multiple Defendants, and, as a number of Circuit's have long held, lumping together defendants in a fraud claim is insufficient. *See Puterman v. Lehman Bros.*, 332 Fed.Appx. 549 (11th Cir.2009); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994); *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.2007); *Burgess v. Religious Tech. Ctr., Inc*., 600 F. App'x 657, 663 (11th Cir. 2015).

Plaintiffs also do not state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into the allegations. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). As such, Plaintiffs do not meet their obligation to put Defendants "on notice of the precise misconduct with which [it is] charged." *Lum*, 361 F.3d at 223-224. In fact, Plaintiffs fail to identify any specific fraudulent statements, omissions, or misrepresentations that were made to them, and fail to allege the contents of these statements and materials, and do not specify when, where, or to whom any of them occurred.[4] Those statements, if they were in fact made, would presumably be at least as well known to Plaintiffs as to Defendants. There is no basis then to excuse Plaintiffs from pleading such statements with particularity. *See Arnold Chevrolet LLC v. Tribune Co.*, 2007 WL 2743490, at *3 (E.D.N.Y. Sept. 17, 2007) ("Plaintiffs' claims stem from

---

[4] Although Plaintiffs' briefs in opposition shed more light on the allegations, I will not consider after-the-fact allegations in determining the sufficiency of the complaint under Rules 9(b) and 12(b)(6). *See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) (" 'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' ") (quoting *Car Carriers, Inc. v. Ford Motor Corp.*, 745 F.2d 1101, 1107 (7th Cir.1984)); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1400 (3d Cir.1991).

misrepresentations made to Plaintiffs themselves. Thus, the date, place, and content of the statements are not facts peculiarly within the knowledge of Defendants, but are facts shared by both parties"); *Concorde Funds, Inc. v. Value Line, Inc.*, 2006 WL 522466, at *5 n. 8 (S.D.N.Y. Mar. 2, 2006) ("Plaintiff is in as good a position as the defendants are to recall the speakers, dates, and content of the alleged misrepresentations").

Moreover, in their Complaint, Plaintiffs never invoke any specific provisions of the UTPCPL; they instead assert generally that Defendants' actions "constitute unfair and deceptive acts and practices" in violation of the UTPCPL. (Doc. 1, at ¶¶ 80, 90-92). I am left guessing which provision or unfair practice Defendants allegedly violated, and consequently, Defendants are left guessing as well. Each Defendant is entitled to know what false representations or deceptions it (rather than the other Defendants) made to which Plaintiffs and when.

The Complaint omits the who, what, when, where, and how of the alleged fraud. There are no facts setting forth what misrepresentation was made by or on behalf of which Defendant; to which Plaintiff it was made, when and by whom; that it was made with knowledge of its falsity; that it was made with the intent to mislead Plaintiffs into relying on it; that Plaintiffs justifiably relied on the misrepresentations; and that the misrepresentation proximately caused Plaintiffs' injury. *See Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). As such, I find that Count I fails to meet the particularity requirement of Fed. R. Civ. P. 9(b) and will be dismissed.

**B.    Count II - Breach of Fiduciary Duty**

The preliminary question before me is whether the heightened specificity requirements of Rule 9(b) extend to Count II. I find that they do. "Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised

13

on the defendant's fraudulent conduct, ... such as an attempt 'to induce action or inaction on the part of the investors by means of falsehoods or material omissions.'" *Henneberry v. Sumitomo Corp. of America*, 2007 WL 2068346, at *30 (S.D.N.Y. July 12, 2007) (quoting *In re Luxottica Group S.p.A. Sec. Litigation*, 293 F.Supp.2d 224, 238 (E.D.N.Y.2003)). Therefore, Count II, as premised on Defendant's alleged fraud, must also be dismissed for failure to meet the pleading requirements of Rule 9(b), as discussed above.

**C.     Count III - Negligence**

Plaintiffs' negligence allegations against Defendants are not grounded in fraud. Plaintiffs neither mention the word "fraud" nor allege facts that would necessarily constitute fraud in Count III of their Complaint. For example, Plaintiffs allege that (1) Defendants failed to act reasonably and responsibly in entering into a contractual arrangement whereby they permitted Hyduk to operate in a position of trust with respect to the funds and investment decisions of Plaintiffs; (2) Defendants failed to properly engage and supervise Hyduk; (3) Defendants failed to implement a system of checks and approvals with respect to the manner in which Hyduk dealt with their insureds. (4) Defendants failed in inquire into or investigate the frequency with which Hyduk customers made early withdrawals or changed their investment directives. (Doc. 1, at 18). Because those allegations do not rely on a fraudulent course of conduct, they cannot be evaluated pursuant to Rule 9(b). *In re Suprema Specialties, Inc. Sec. Litig.*,438 F.3d 256, 272-73 (3d Cir. 2006) ("[W]here the claims are expressly premised on negligence rather than fraud, Rule 9(b) has been held inapplicable"). Rather, I must evaluate whether they satisfy Rule 8. *See Rawson Food Servs., Inc. v. TD Bank, N.A.*, 2014 U.S. Dist. LEXIS 25906, at *12 (D.N.J. Feb. 28, 2014). I find that they do not. Similarly to discussion in the two preceding sections, lumping together all Defendants proves fatal to the allegations in Count III.

As numerous courts have held in the context of Rule 8, concluding mass and mutual liability without pleading the supporting facts does not show "that the pleader is entitled to relief" and does not give any of the Defendants "a fair notice of what the ... claim is and the grounds upon which it rests." Rule 8(a)(2). *See, e.g., In re Auto Body Shop Antitrust Litig.*, 2015 WL 4887882, at *6 (M.D. Fla. June 3, 2015) (finding that complaints did not meet Rule 8 where no allegations against the defendant insurance companies "support attributing the wrongful conduct of one Defendant to unrelated and independent wrongful conduct of another Defendant. Lumping together separate and unrelated conduct in this manner does not put Defendants on notice of the grounds for the claims against them"); *Jacobs v. Soars*, 2014 WL 7330762, at *8 (D. Mass. Dec. 19, 2014) (holding that under Rule 8(a), "[j]oining all of the defendants *en masse* into the majority of the allegations without a factual basis to show how each individual was involved does not afford each defendant fair notice of the factual allegations and causes of action against him, her, or it"); *Joseph v. Bernstein*, 2014 WL 4101392, at *3 (S.D. Fla. Aug. 19, 2014) *aff'd*, 612 Fed. Appx. 551 (11th Cir.2015) ("When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8"); *see also Paet v. Fernandez*, 2013 WL 840224, at *4 (D. Haw. Mar. 5, 2013); *Gould v. Citi Mortg., Inc.*, 2011 WL 7615124, at *18 (D. Minn. Dec. 29, 2011) report and recommendation adopted, 2012 WL 1005035 (D. Minn. Mar. 26, 2012); *Corazon v. Aurora Loan Services, LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011).

Each Defendant is entitled to know how it acted unreasonably and irresponsibly in entering into a contractual arrangement with Hyduk, how it (as opposed to the other Defendants) supposedly "failed to properly engage and supervise Hyduk," and how it "failed to implement a system of checks and approvals" or failed to investigate the frequency of all the Plaintiffs' withdrawals on all annuities issued by all Defendants. (Doc. 1, at ¶¶ 104-07).

In light of the failure to sufficiently plead the allegations in Count III, it will be dismissed.

**D.     Leave to Amend**

In their Motions to Dismiss, Defendants also argue that Plaintiffs should not be granted leave to amend the Complaint and request that I dismiss all claims with prejudice. (Doc. 16, at 13-15). I disagree. The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). Here, because Plaintiffs may be able to allege facts sufficient to properly state their negligence, breach of fiduciary duty, and UTPCPL claims, I will grant leave to amend Counts I, II, and III of the Complaint.

### IV. Conclusion

For the above-stated reasons, I will grant in part and deny in part Defendants' motions to dismiss the Complaint without prejudice to Plaintiffs' right to file an amended Complaint. Plaintiffs will be required to amend their pleading to state their fraud claims with respect to each Defendant insurance company with the requisite specificity. *See, e.g., F.D.I.C. v. Briscoe,* 2012 WL 8302215, at *8 (N.D. Ga. Aug. 14, 2012) (claims dismissed without prejudice and plaintiff granted leave to replead where defendants were improperly lumped together).

An appropriate order follows.

November 22, 2016                                               /s/ A. Richard Caputo
Date                                                                          A. Richard Caputo
                                                                                   United States District Judge