**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TIMOTHY AND ANN DOLAN, et. al.,

    Plaintiffs,

        v.

PHL VARIABLE INSURANCE
COMPANY, et. al.,

    Defendants.

CIVIL ACTION NO. 3:15-CV-01987

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before this Court are four (4) motions to dismiss Plaintiffs' Amended Complaint (Doc. 56) filed by Defendants Allianz Life Insurance Company of North America ("Allianz") (Doc. 64), North American Company For Life and Health Insurance ("North American") (Doc. 65), PHL Variable Insurance Company ("PHL") (Doc. 66), and Forethought Life Insurance Company ("Forethought") (Doc. 67) (collectively "Defendants"). Because the Amended Complaint fails to comport with Federal Rule of Civil Procedure 9(b) and fails to adequately plead a claim under the UTPCPL, Count I of the Amended Complaint will be dismissed without prejudice. Count II of the Amended Complaint will also be dismissed without prejudice because Plaintiffs have failed to adequately plead a fiduciary or confidential relationship between the parties. Finally, Count III of the Amended Complaint will be dismissed with prejudice because Plaintiffs' negligence claims are barred by the economic loss doctrine.

### I. Background

**A. Factual Background**

The facts, as set forth in Plaintiffs' Amended Complaint (Doc. 56), are as follows:

Plaintiffs Timothy and Ann Dolan, the Estate of Jean Dolan, Raymond and Elizabeth

Flannery, Robert and Linda Gruner, Virginia Hetherington, and Carmen Fierro (collectively "Plaintiffs") are alleged victims of a scheme perpetrated by a registered financial advisor, Joseph S. Hyduk ("Hyduk"), and his company BNA Financial Services ("BNA").

Plaintiffs aver that Hyduk separately targeted each Plaintiff, held himself out as an agent of Defendants, and specifically presented each Plaintiff with investment opportunities with Defendants. Hyduk explained to Plaintiffs that their purchase of annuities with Defendants would be a safe investment option without risk to principal. Further, Hyduk explained to Plaintiffs that the minimum guaranteed return on these annuities would be one percent. Plaintiffs allege that to convince them to purchase annuities issued by Defendants, Hyduk would often present Plaintiffs with *pro forma* statements prepared by Defendants, indicating the projected returns Plaintiffs would receive on their investment. Those statements allegedly helped convince Plaintiffs to rollover their existing investments to products issued by Defendants. Notably, Plaintiffs do not aver that the *pro formas* provided false information.

To purchase annuities issued by Defendants, Plaintiffs were required to complete applications. After having their applications approved, Plaintiffs, through Hyduk, would purchase annuities issued by Defendants. These purchases would be accompanied by rollover forms identifying the current plan information and the account being transferred.

Following the purchase of an annuity, Hyduk would manipulate Plaintiffs into selling their investment for his own gain. Hyduk profited by having his clients take withdrawals subject to substantial fees and penalties from their annuities issued by Defendants. After receiving the refund checks, instead of purchasing alternative investment products, Hyduk would keep those funds for his own benefit. Defendants also profited from Hyduk's actions because they retained fees related to Plaintiffs early withdrawal.

Plaintiffs claim that Hyduk's rate of early withdrawals was unusually high and should

have put Defendants on notice that Hyduk was not operating according to industry standards or in the best interest of their customers. The withdrawals generally occurred within the first few years following the purchase of Defendants' annuities, thus causing Plaintiffs to incur substantial surrender fees in connection with these transactions. It is unclear what industry standard Plaintiffs rely on and whether defendants were able to deny potentially fraudulent withdrawal requests.

Plaintiffs further allege that Defendants ignored countless "red flags" that may have suggested that Hyduk was defrauding his clients. Specifically, Plaintiffs allege that Defendants ignored numerous transactions where the sale of annuities by Hyduk's clients resulted in substantial surrender charges. Defendants also purportedly disregarded that Hyduk's clients' repeated withdrawal requests were often unaccompanied by rollover forms authorizing the transfer of funds to purchase different investments offered by other financial service providers. According to Plaintiffs, the volume of transactions in which Hyduk's victims requested withdrawals in the absence of rollover forms was atypical and signaled a likelihood of criminal activity. Yet, despite the absence of rollover information, Defendants and their respective compliance departments failed to investigate Hyduk or otherwise question the provision of services by their authorized agent. Again, it is unclear what standard is used by Plaintiffs to deem Defendants' conduct atypical.

Plaintiffs also allege that Hyduk converted the withdrawn funds for his own use by asking Plaintiffs to endorse checks for the funds directly to him. Defendants, however, allegedly ignored the fact that the withdrawal forms were not signed by the annuity holder, and failed to conduct any due diligence as to the conduct of Hyduk and the circumstances of these withdrawal requests.

At bottom, Plaintiffs allege that, although numerous warning signs existed, Defendants failed to conduct even minimal due diligence with respect to Hyduk's

operations.

## B. Procedural History

On October 16, 2013, Hyduk's company was raided by the Federal Bureau of Investigation. On August 4, 2014, charges were filed against Hyduk in this Court.[1] Subsequently, Hyduk pled guilty to tax evasion and wire fraud. On July 30, 2015, he was sentenced to more than five years in prison

In light of the foregoing events, on November 13, 2015, Plaintiffs filed a three-count Complaint (Doc. 1) against Defendants. Plaintiffs' Complaint was dismissed in its entirety without prejudice on November 22, 2016 due to its failure to comply with Federal Rules of Civil Procedure 8 and 9(b).

Plaintiffs timely filed an Amended Complaint on December 13, 2016. The Amended Complaint contains the following claims: (1) Count I alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (2) Count II alleging a breach of fiduciary duties by Defendants; and (3) Count III alleging negligence. These are the exact claims contained in Plaintiffs' original complaint.

Again, Defendants have moved to dismiss all claims with prejudice. (Docs. 64-67). These motions have been fully briefed and are ripe for disposition.

---

[2]    *See* United States v. Hyduk, No. 3:14-cr-00189 (M.D. Pa., 2014):
   "It was part of the scheme that HYDUK would improperly divert funds from his clients to himself without his clients' knowledge or consent. The majority of the diverted funds was from clients who intended the money to be rolled-over into different investments. HYDUK instructed them to make their checks payable to BNA Financial instead of the actual new investment company and deposited the funds into his own account and used the money for his personal benefit. . . ." (Doc 1, at ¶ 3.)

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1)

identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.,* 424 Fed. App'x. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A Court may also consider a "document integral or explicitly relied upon in the complaint." *In Re*

6

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by this Court when ruling on a motion to dismiss when Plaintiff had proper notice of the existence of the documents. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants advance a number of identical arguments[2] seeking dismissal of the Amended Complaint in its entirety.

### A. The Amended Complaint's Compliance with the Federal Rules of Civil Procedure

*1.    Federal Rule of Civil Procedure 9(b)*

Defendants first argue that Counts I and II of Plaintiffs' Amended Complaint should be dismissed for non-compliance with Federal Rule of Civil Procedure 9(b). Remember, Rule 9(b) was fatal to Plaintiffs' original complaint. Defendants contend that many of the infirmities in Plaintiffs' Complaint were not cured by the Amended Complaint.

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading requirement for claims of fraud or mistake. Specifically, the Rule requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). In other words, "[a] plaintiff alleging fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story - that is, the who, what, when, where and how of the

---

[2]    Where a single Defendant has raised an argument not raised by its co-Defendants it will be noted below.

events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Additionally, Rule 9(b) requires plaintiffs "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

This Court noted in its November 22, 2016 Memorandum that Plaintiffs' claims predicated on the UTPCPL and an alleged breach of a fiduciary duty implicate Rule 9(b). The Amended Complaint has not altered this Court's earlier analysis, and thus it is still the opinion of this Court that these claims are subject to Rule 9(b). However, there is a question as to whether the Amended Complaint now satisfies the mandates of the Rule.

Unfortunately, Plaintiffs have again failed to include averments that sufficiently establish the who, what, when, where, and how of the alleged fraud and thus fail to satisfy the requirements of Rule 9(b). This Court's November 22, 2016 Memorandum specifically noted that Plaintiffs needed to make clear exactly what misrepresentations or fraudulent conduct related to each Defendant and impacted each Plaintiff. In other words, the Amended Complaint needed to refrain from referring to the parties as collective entities, and provide additional information regarding the who, what, when, where, and how of the alleged fraud. While the Amended Complaint has made strides to discuss each Defendant individually, the averments against individual Defendants are regularly asserted by a collective set of Plaintiffs. As was explained in the earlier Memorandum, such pleading runs afoul of Rule 9(b).

Further, the Amended Complaint fails to identify a misrepresentation made by the Defendants. Rather, Plaintiffs seem to rely on Defendants' failure to realize that Hyduk was committing a fraud. For example, a principal contention made by Plaintiffs is that Defendants failed to identify a number of so-called "red flags" which ultimately caused injury to Plaintiffs. To that end, Plaintiffs repeatedly refer to the "unusually high" number of early withdrawal requests made by Hyduk as a "red flag" that should have alerted Defendants' to a potential fraud. But, the Amended Complaint includes no averment related to the frequency of requests, the type of requests made, or for which Plaintiffs requests were made. Rather, the Amended Complaint supports its position through the use of generalities (*see, e.g.*, Am. Coml. ¶¶ 88-89 (using phrases such as "unusually high" and "on occasion.").) Also, Plaintiffs claim that many withdrawal forms submitted by Hyduk were forged and "should have been easily identified by [Defendants'] compliance department[s]." (*see, e.g.,* Am. Compl. ¶¶ 89, 149, 267.) Plaintiffs reference no specific signature that was forged, or injury caused by such forgery. In fact, Plaintiffs made the averment on "information and belief," which compounds the factual deficiency present here. *See UHS of Del., Inc. v. United Health Servs.*, No.12-485, 2015 WL 7294454, *7 (M.D. Pa. Nov. 19, 2015). Put simply, these "red flags" fail to meet the standard required under 9(b).

Moreover, Plaintiff liters the Amended Complaint with conclusory statements in an attempt to satisfy the mandate of Rule 9(b). For example, Plaintiffs claim that "Hyduk was not operating in accordance with industry standards." (*see, e.g.*, Am. Compl. ¶¶ 88, 148.) No averment was made to suggest an industry standard, or show what conduct of a Defendant was in question.

Finally, as specifically noted by Defendant North American, in some respects the Amended Complaint created more questions than it answered. For example, in the Amended Complaint Plaintiffs aver that the alleged misrepresentations were made "in

person (typically at the victim's home) and on the telephone." (Am. Compl. ¶¶ 57, 118, 188, 241.) Such a statement does not provide nearly enough information for a Defendant to properly respond. In fact, it leaves this Court and Defendants with more questions: What was discussed at these meetings?; Was each Defendants' product pitched to a potential victim or was it just one Defendants' product?; Were the alleged misrepresentations made in the home as was typical, or over the phone? The fact that these basic questions remain unanswered illustrates why Rule 9(b) has not been satisfied.

Because the Amended Complaint fails to comply with Rule 9(b), Count I and II of the will be dismissed.

   *2.     Federal Rule of Civil Procedure 8*

Defendants Forethought and North American argue that Count III of Plaintiffs' Amended Complaint remains noncompliant with the mandates of Federal Rule of Civil Procedure 8. However, this is incorrect.

Federal Rule of Civil Procedure 8 provides "that any pleading that includes a claim for relief shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Westinghouse Securities Litigation*, 90 F.3d 696, 702 (3d Cir. 1998) (Alito, J) (citing FED.R.CIV.P. 8(a)(2)).   Rule 8 further provides that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Securities Litigation*, 90 F.3d at 702 (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1217 at 169 (2d ed. 1990)). Further, the statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Twombly*, 550 U.S. 544, 555 (2007).

Put simply, the Amended Complaint satisfies the requirements of Rule 8. The

infirmity identified by this Court in the original complaint has been cured. Defendants are on fair notice of the claims asserted by Plaintiffs in Count III. And, Defendants suggestion otherwise would be akin to requiring a heightened pleading standard, like that of Rule 9(b), for traditional negligence claims. Such a decision would be inappropriate.

Therefore, Count III of Plaintiffs' Amended Complaint will not be dismissed for non-compliance with Federal Rule of Civil Procedure 8.

## B. Defendants' Vicarious Liability for the Actions of Hyduk

One of the bedrock disputes between the parties is whether Hyduk should be considered Defendants' agent. Defendants argue that Hyduk should not be considered an agent of their insurance companies, but rather should be considered a broker. Defendants suggest that designating Hyduk as a broker would mean that Hyduk was Plaintiffs' agent. If accepted, it follows that Defendants would not be liable for any acts undertaken by Hyduk because no agency relationship existed. Plaintiffs disagree and argue that even if Hyduk is considered a broker, he may still be considered Defendants' agent. Further, Plaintiffs contend that discovery is necessary when an agency relationship is alleged, and therefore this Court may not dismiss claims predicated on such a relationship at this stage of litigation.

As an initial matter, this Court is able to evaluate whether or not Plaintiffs have properly pled an agency relationship when reviewing a motion to dismiss. Plaintiffs rely on a number of cases to suggest that "discovery is necessary when an agency relationship is alleged," and this Court agrees. (*See, e.g.*, Doc. 77, at 20-21.) However, this does not mean that a plaintiff may survive a motion to dismiss if they offer solely conclusory or insufficient statements to imply an agency relationship. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x. 803, 808 (3d Cir. 2003) (noting that plaintiffs are required to "allege facts sufficient to allow [an agency relationship] to be proven at trial, but is not

required to have extensive proof at the complaint stage."); *My Space Preschool & Nursery, Inc. v. Capitol Indem. Corp.*, No. 14-2826, 2015 WL 1185959, at *4 (E.D. Pa. Mar. 13, 2015) (dismissing a claim for failure to properly allege an agency relationship). Thus, dismissal is proper when no agency relationship is adequately alleged. For these reasons, this Court may determine whether or not Plaintiffs have pled facts sufficient to survive a motion to dismiss.

The Pennsylvania Supreme Court has held that an insurance broker is considered the agent of the insured when the insured employs a broker to choose an insurer. *Transgaurd Ins. Co. of Am. Inc., v. Hinchey*, 464 F. Supp. 2d 425, 431 (M.D. Pa. 2006) (citing *Taylor v. Crowe*, 282 A.2d 682, 683 (Pa. 1971)). But, this does not mean that a broker may never be considered an agent of an insurer. Rather, "in some situations, a broker can be considered an agent for the insured in some respects and an agent for the insurer in other respects." *Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 514 (M.D. Pa. 1998) (Caputo, J.). "The agency status of a broker depends on the relationship between the broker and the insured as well as the broker and the insurer." *Id.* A broker will likely be considered an agent of the insurer if there is evidence that the broker had the insurers "apparent, if not actual authority." *Id.* So, here, Plaintiffs must provide averments related to the relationship between the Defendant-insurers and the Plaintiffs sufficient to suggest an agency relationship exists.

Plaintiffs do provide some averments related to a potential agency relationship between the Plaintiffs and Defendants. However, the averments made are not sufficient to survive a motion to dismiss. Many of the averments raised by Plaintiffs are identical for each Defendant. For example, Plaintiffs aver that "Hyduk as an agent of [Defendants], targeted Plaintiffs for investment opportunities. . . ." (see, Am. Compl. ¶¶ 57, 118,188, 241.) Such statement, a mere conclusion related to agency, is not considered when analyzing a motion

to dismiss.[3] Additionally, Plaintiffs aver the existence of contractual agreements between each Defendant and Hyduk. These agreements generally referred to Hyduk as an "agent" and set forth the terms by which Hyduk was to sell Defendants' annuities. Plaintiffs posit that reference to Hyduk as an "agent" in these agreements and various other marketing forms is sufficient to survive the instant motions to dismiss. But, this is incorrect; "[a]gency contracts alone are not sufficient to establish agency between a broker and an insurer." *Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, No. 10-1875, 2012 WL 4506059, at *8 (M.D. Pa Apr. 26, 2012) (citing *Kairys v. Aetna Cas. & Sur. Co.*, 461 A.2d 269, 273 (Pa. Super. Ct. 1983)) *report and recommendation adopted* 2012 WL 4504600 (M.D. Pa Oct. 1, 2012) (Connor, J). In *Hartford Casualty*, a contract that permitted an "agent" to "solicit, quote, and provide customary insurance services" on behalf of an insurer to members of the public was insufficient to "overcome the presumption . . . that the broker is the agent of the insured, not the insurer." *Id.* The facts pled in Plaintiffs' Amended Complaint provide a nearly identical scenario. As was the case in *Hartford Casualty*, this Court will find that such a contract is insufficient to establish an agency relationship.

Since pleading related to an agency contract and marketing materials are the only statements offered by Plaintiffs to suggest an agency relationship, Defendants are owed dismissal for all claims relying on an agency relationship between Hyduk and the various Defendants.

## C. Timeliness of Plaintiffs' Amended Complaint

Defendant Allianz argues that Plaintiffs' Amended Complaint should be dismissed in its entirety because its claims are time-barred to the extent that they are predicated on

---

[3]     Additional conclusory statements related to agency exist across averments against all four Defendants. For example, Plaintiffs claim that "Hyduk's conduct occurred during his agency relationship with [Defendants]." Again, statements like this will not be considered during a motion to dismiss.

representations associated with their annuity purchases. To support their position, Defendant Allianz has provided the contracts for annuities that were expressly implicated by the Complaint. These documents show that all of the Allianz annuities referenced in Plaintiffs' Amended Complaint were purchased in 2008 and 2009; the most recent policy issued in June of 2009. Defendants suggest that Plaintiffs' UTPCPL claim is subject to a six-year statute of limitations, and Plaintiffs' remaining claims are subject to a two-year statute of limitations. Since this action was not filed until October 13, 2015, it would follow that all claims brought by Plaintiffs against Allianz would be time barred.

Plaintiffs do not suggest that Defendants argument is incorrect. Rather, Plaintiffs posit that Defendants may not argue that claims are barred by the statute of limitations in a motion to dismiss when the bar is not "apparent on the face of the complaint." (Doc. 76, at 25 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).) Plaintiffs also suggest that the documents referenced by Defendant Allianz must not be considered to determine whether the action is barred by the statute of limitations because the contents of those documents are not "apparent on the face of the complaint," and the claims asserted by Plaintiffs are not "based" on those documents. (Doc. 76, at 25-26.) In this regard, Plaintiffs are incorrect; these documents may be examined.[4]

However, Plaintiffs claims are not time-barred because the injury alleged by Plaintiff

---

[4]     It is well-settled that this Court may consider "undisputedly authentic" documents when a plaintiff's claims are based on the documents and a defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.,* 424 Fed. App'x. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A Court may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). Here, Plaintiffs have explicitly cited to the documents in question in the Amended Complaint. For this reason, the documents may be considered when deciding Defendant Allianz's Motion to Dismiss.

is not solely based on representations made by Hyduk or Defendants at the time the annuities were purchased, but on the withdrawal of funds and continued fraud perpetrated by Hyduk. No dates exist on the face of the complaint, or within the documents submitted by Defendant Allianz, to suggest that these claims would be time-barred simply because Plaintiffs could have known that early withdrawal charges existed in 2008 and 2009. Stated differently, the application of the statute of limitations is not "obvious," and the application of the statute of limitations is "reasonably susceptible to dispute." *Javaid v. Weiss*, 2011 WL 6339838, at *10 (M.D. Pa. Dec. 19, 2011). As such, it would be inappropriate to dismiss Plaintiffs' claims against Defendant Allianz as untimely.

### D. Count I: UTPCPL Claims

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair or deceptive acts or practices. Defendants contend that Count I of Plaintiffs' Amended Complaint should be dismissed because Plaintiffs fail to plead a false statement or misrepresentation made by Defendants and similarly fail to plead that they justifiably relied upon Defendants' supposed misrepresentation as required by the UTPCPL.

"In order to state a claim under the UTPCPL, a plaintiff must allege one of the unfair or deceptive trade practices set forth in 73 P.S. §201-2(4)(i)-(xxi)." *Freeny v. Disston Manor Personal Care Home*, 849 A,ed 590, 597 (Pa. Super. Ct. 2004), *appeal denied*, 581 Pa. 691 (2004). Plaintiffs cite four sections of the UTPCPL in the Amended Complaint. Each alleged unfair or deceptive trade practice alleged is discussed below:

*(1)    Plaintiffs fail to allege a claim under 73 P.S. §201-2(4)(v)*

Plaintiffs first argue that the Amended Complaint adequately pleads a claim under 73 P.S. §201-2(4)(v). This provision of the UTPCPL notes that it is an "unfair or deceptive act" to "[r]epresent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a

sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. §201-2(4)(v). In laymans terms, it is unlawful to falsely advertise. "In order to set forth a claim under this provision of the UTPCPL, a plaintiff must allege: (1) 'a defendant's representation is false; (2) 'it actually deceives or has a tendency to deceive'; and (3) 'the representation is likely to make a difference in the purchasing decision.'" *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (citing *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999)). As with all claims under the UTPCPL, Plaintiffs must also allege justifiable reliance, causation, and an ascertainable loss. *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) (citing *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005); *Seldon*, 647 F. Supp. 2d at 467.

Here, Plaintiffs' claim fails because Plaintiffs have not alleged that Defendants made a false representation. To support their claim, Plaintiffs contend that documents provided by Defendants–such as *pro formas* and marketing materials–"falsely advertised that the annuities were safe, risk free investment vehicles." (*See, e.g.*, Doc. 76, at 12). But, no such allegation is made in the Amended Complaint. Rather, Plaintiffs only aver that these documents "convinced" the defendants to purchase the annuities, and that the documents created the impression that the annuities were "safe risk free investment vehicles." (*See, e.g.*, Am. Compl. ¶¶ 203-205). There is no question that Plaintiffs regularly note that Hyduk used these documents to support his fraud. (*See, e.g.*, Am. Compl. ¶¶ 198-202). However, Hyduk's misrepresentations will not be imputed to the Defendants, and no averment exists within the Amended Complaint to suggest that the *pro formas* or marketing materials provided by Defendants were false. For this reason, the facts as pled do not support a claim under §201-2(4)(v).

    (2)    *Plaintiffs fail to allege a claim under 73 P.S. §§201-2(4)(ii),(iii)*

Next, Plaintiffs allege claims of misrepresentation of services and misrepresentation

of association under 73 P.S. §§201-2(4)(ii)-(iii). The UTPCPL defines a misrepresentation of services as an act "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." 73 P.S. §§201-2(4)(ii) On the other hand, a misrepresentation of association is defined as an act "causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another." 73 P.S. §§201-2(4)(iii). Like all claims under the UTPCPL, a plaintiff is required to plead justifiable reliance, causation, and an ascertainable loss. *See Baker*, 440 F. Supp. 2d at 412; *Seldon*, 647 F. Supp 2d at 467.

In addition to the normal pleading requirements for a UTPCPL claim, a plaintiff raising a claim of misrepresentation of services must plead that the defendants "representations were likely to cause confusion or misunderstanding." *Id.; accord* 73 P.S. §§201-2(4)(ii)*.* Here, Plaintiffs posit that the Defendants' use of "suitability" forms or questionnaires caused a misunderstanding that Defendants' annuities were appropriate investment vehicles for Plaintiffs. But, Plaintiffs never allege that the annuities were inappropriate for Plaintiffs, or that they were confused about the meaning of the so-called suitability forms. Rather, the core of Plaintiffs argument is that they fell victim to a fraud perpetrated by Hyduk, not that they were confused by a representation made by Defendants. In fact, it is undisputed that Plaintiffs were aware of the potential fees associated with the early termination of their annuities. Any pled confusion or misunderstanding is not attributed to the marketing efforts of Defendants, but rather to Hyduk's fraud. Thus, Plaintiffs have failed to adequately plead a claim for misrepresentation of services under the UTPCPL because Plaintiffs have not adequately pled that a representation made by Defendant likely confused Plaintiffs and caused an ascertainable loss.

Similarly, Plaintiffs claim for misrepresentation of association fails. While Plaintiffs

have sufficiently pled that materials provided by Defendants may have caused a misunderstanding as to Hyduk's "affiliation, connection or association, with" Defendants, Plaintiffs have failed to plead that this misunderstanding caused their harm. Plaintiffs never pled that confusion related to Hyduk's association with the Defendants caused Plaintiffs to suffer losses related to the early withdrawal fees assessed by Defendants. Because Plaintiffs failed to plead a causal connection between the alleged misrepresentation and the harm suffered, Plaintiffs claim for misrepresentation of association under the UTPCPL will be dismissed. *See Seldon*, 647 F. Supp. 2d at 467 (noting that causation is an element "essential to any UTPCPL claim").

(*3*)    *Plaintiffs fail to allege a claim under 73 P.S. §201-2(4)(xxi)*

Finally, Plaintiffs allege a claim under the UTPCPL's catch-all provision, 73 P.S. 201-2(4)(xxi). As explained in this Court's earlier Memorandum, this claim sounds in fraud and requires not only pleading compliant with Federal Rule of Civil Procedure 9(b), but requires Plaintiffs plead the common law elements of fraud. The common law elements of fraud are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result.*" Piper v. Am. Nat'l Life Ins. Co.*, 228 F. Supp 2d 553, 560 (M.D. Pa. 2002). Further, the Third Circuit has held that "a defendant cannot be held 'derivatively liable' under the UTPCPL for the fraudulent action of a third party when 'plaintiff fails to allege or present any evidence that [the defendant] ever knowingly engaged in misrepresentation.'" *Belmont v. MB Inv. Partners*, 708 F.3d 470, 499 (3d Cir. 2013) (citing *Canty v. Equicredit Corp. of Am.*, No. 01-5804, 2003 WL 21243268, at *3 (E.D. Pa. May 8, 2003)).

As discussed earlier in this Opinion, Plaintiffs have failed to meet the pleading requirements under Rule 9(b). Therefore, this claim will be dismissed. Additionally, this

claim will be dismissed because Plaintiffs are attempting to hold Defendants derivatively liable for a fraud committed by Hyduk where they have not pled that Defendants "knowingly engaged in misrepresentation." For these reasons, Plaintiffs claim under the catch-all provision of the UTPCPL will be dismissed.

### E. Count II: Breach of Fiduciary Duty[5]

Next, Defendants contend that Count II of Plaintiffs' Second Amended Complaint should be dismissed because Plaintiffs fail to allege that Defendants entered a fiduciary or confidential relationship with any given Plaintiff, and therefore no fiduciary duty was owed. Defendants are correct.

In order to allege a breach of fiduciary duty, "a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendants." *Baker*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) (citing *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005); *see Mifflinburg Tel., Inc. v. Criswell*, No. 14-0612, 2017 WL 4310187, *26 (M.D. Pa. Sept. 28, 2017). In the insurance context, contracts give rise to a fiduciary relationship under special circumstances indicating "overmastering influence." *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (analyzing Pennsylvania law). "[T]he critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on the one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. Ct. 2002) (citing *Basile v. H&R Block*, 777 A.2d 95,101 (Pa. Super. Ct. 2001). A confidential relationship is slightly different. "Although no precise formula has been devised to ascertain the existence

---

[5]     As noted above, Count II of the Amended Complaint will be dismissed due to its failure to comply with Federal Rule of Civil Procedure 9(b). The following analysis does not supplant, but rather supplements that analysis and provides an alternative justification for dismissal.

of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966). Further, the relevant case law suggests that whether a fiduciary duty arises "depends not on the goods or services that are the subject of the transaction, but the character of the relationship between the parties." *See.e.g.*, *See Hatch v. Prudential Fin., Inc.*, No. 05-2050, 2006 WL 3325636, at *4-5 (M.D. Pa. Nov. 14, 2006).

Here, neither a fiduciary nor confidential relationship has been properly pled.

First, Plaintiffs have failed to plead "special or unusual facts" that would indicate an "overmastering influence," and thus a fiduciary relationship. Generally, an insurance contract–epitomizing the "quintessential arm's-length relationship between buyer and seller"–is not accompanied by such "special or unusual" facts as to create a fiduciary relationship. *See Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d 218, 227 (3d Cir. 2000) ("Under Pennsylvania law, a fiduciary duty. . . does not arise out of an insurance contract until the insurer asserts a stated right to handle all claims asserted against the insured."); *Bank Trust Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("As a general rule, a life insurance company has no fiduciary obligation to the beneficiary . . . ."). Plaintiffs have not pled facts to suggest that special circumstances exist which would create a fiduciary relationship between any one Plaintiff and any one Defendant. Therefore, a fiduciary relationship has not been properly pled.

Not only did Plaintiffs fail to plead "special or unusual" facts necessary to establish a fiduciary relationship, Plaintiffs pled facts that illustrate Defendants lack of an "overmastering influence." For example, Plaintiffs' averments suggest that each Plaintiff had the opportunity to consider annuities from each of the Defendants. In fact, the Amended Complaint shows that many Plaintiffs obtained annuities from several different annuity

providers. For this reason, it is hard to imagine that any Defendant had an "overmastering" influence over any Plaintiff when Plaintiffs had the option to–and seemingly did–seek out alternate providers if they were not pleased with the terms offered by a given Defendant. These facts simply do not support a finding that the Defendants were in a fiduciary relationship with Plaintiffs.

Having failed to affirmatively plead facts necessary to establish a fiduciary relationship, Plaintiffs argue that a *per se* fiduciary relationship is created when there is an agreement between  an annuity carrier (an insurer) and the beneficiaries of an annuity. To support this position Plaintiffs rely solely on a decision by the Lackawanna County Court of Common Pleas: *Beecham v. American Life & Cas. Ins. Co.*, 63 D. & C. 4.th. 52, 64-65 (C.C.P. Lackawanna 2003). In *Beecham*, the court held that a fiduciary relationship exists between an annuity carrier and the beneficiaries of the annuity. *Id.* While this case clearly supports Plaintiffs' position, it will not be followed here for two reasons. First, in rendering its unpublished decision, the *Beecham* Court did not cite a single authority to support the contention that a fiduciary relationship exists simply because an annuity is involved. Second, case law within this District has suggested the opposite. *See Hatch*, 2006 WL 3325636, at *4-5; *see also Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 WL 4072585, at * 7 (E.D. Pa. Sept. 2, 2008). For these reasons, this Court will not conclude that there is a *per se* fiduciary relationship between an annuity carrier and holder.

Second, Plaintiffs failed to plead that any Defendant served Plaintiffs as "advisor or counselor" as to establish a confidential relationship. Plaintiffs pled no facts to suggest that they were counseled or advised by Defendants. The Amended Complaint includes no allegation that Plaintiffs discussed their annuities directly with Defendants, and there is no allegation that Plaintiffs received financial advice from Defendants. Further, Plaintiffs do not claim that Defendants recommended surrendering their annuities. Instead, Plaintiffs suggest

that "*pro formas* and marketing materials" convinced Plaintiffs that they were being offered "safe, risk-free investment vehicles" by Defendants. Further, Defendants have offered documentation to suggest that they were never engaging in advisory services.[6] For example, the enrollment form provided by Defendant Forethought specifically states: "Forethought Life Insurance Company does not offer legal, financial, tax, investment, or estate planning advice." Moreover, that same form notes that Plaintiffs had "the opportunity to seek such advice from the proper sources before" purchasing the annuity. As such, no facts pled suggest that a confidential relationship was created.

Plaintiffs alternatively suggest that this analysis is inappropriate upon review of a motion to dismiss because the "existence of a confidential relationship requires a fact-sensitive inquiry not to be disposed rigidly as a matter of law." *Yenchi v. Ameriprise Fin., Inc.*, 123 A.3d 1071, 1079 (citing *Basile*, 777 A.2d at 101). Here, however, the question before the Court is not whether or not a confidential relationship existed, but whether there has been adequate pleading to support such a claim. Courts within the Third Circuit have regularly dismissed claims for failing to properly plead a fiduciary or confidential relationship. *See, e.g.*, *Reginella Constr. Co. Ltd. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 613 (W.D. Pa. 2013) ("Even if [Plaintiff] were to prove every fact it alleges in its Complaint, it still would not be entitled to relief on its fiduciary duty claims, because the facts fail to establish that a fiduciary duty existed. . . ."); *Minesweaser v. Prudential Ins. Co. of Am.*, No. 16-1172, 2016 WL 5792778, at *5 (W.D. Pa. Oct. 4, 2016); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (holding that Plaintiff failed to state a claim under Pennsylvania law and dismissal pursuant to Rule 12(b)(6) was appropriate where no special circumstances had been pled to establish a fiduciary

---

[6] These documents may be reviewed on a motion to dismiss. *See Am. Corp. Soc.*, 424 Fed. App'x. at 86; *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

relationship). For this reason, this Court may consider whether Plaintiffs have properly pled facts necessary to support a fiduciary or confidential relationship.

Finally, Plaintiffs claim that Defendants entered into a fiduciary or confidential relationship with Plaintiffs through their agent, Hyduk. As described above, Plaintiffs have not properly pled an agency relationship between Hyduk and Defendants. As such, this argument is unpersuasive.

Because neither a fiduciary nor confidential relationship has been sufficiently pled, Defendants' Motions to Dismiss should be granted with respect to Count II.

### F. Count III: Negligence Claims

Defendants argue that Count III of Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted because Pennsylvania's economic loss doctrine–recognized by the Third Circuit–bars Plaintiffs' negligence claims. Plaintiffs disagree and argue that the economic loss doctrine is not applicable here because the doctrine has historically applied only in products liability cases. Further, Plaintiffs contend that courts in this Circuit have held that the doctrine does not apply to bar claims of negligent hiring or supervision. Plaintiffs are incorrect.

At bottom, the "economic loss doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'" *Longenecker-Wells v. Benecard Servs.*, 658 Fed. App'x 659, 661 (3d Cir. 2016) (citing *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009)); *see Azur v. Chase Bank, USA*, 601 F.3d 212, 222 (3d Cir. 2010). While it is true that the doctrine was born out of product liability claims, the doctrine has expanded to encompass negligence claims of a much wider variety. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001) (noting that the doctrine "developed in the context of courts' precluding products liability tort claims. . . ."); *Lower*

*Lake Doc Co. v. Messinger Bearing Corp.*, 395 Pa. Super. 456, 462-63 (Pa. Super. 1990) (stating that the doctrine "is not limited to products liability, but has equal application in negligence cases.").[7] For example, the economic loss doctrine applies to claims of negligent supervision. *See Estate of Clark v. Toronto Dominion Bank*, No. 12-6259, 2013 WL 1159014, *10 (E.D. Pa. Mar. 21, 2013) ("[B]ecause the only damages which Plaintiff alleges it sustained as a consequence of Defendant's alleged negligence and negligent supervision in this case are solely economic in nature, we find that these claims are barred by operation of the economic loss doctrine."); *Flannery v. Mid Penn Bank*, No. 08-0685, 2008 WL 5113437, *7 (M.D. Pa. Dec. 3, 2008).

Conceding that a number of courts have broadened the economic loss doctrine, Plaintiffs are forced to argue that the decisions of these courts were in error. To support this contention Plaintiffs rely heavily on two cases: *Independent Warehouse Inc. v. Professori*, No. 15-1369, 2016 WL 1569210 (W.D. Pa. Apr. 19, 2016), and *Heller v. Patwil Homes*, 713 A.2d 105 (Pa. Super. 1998). First, Plaintiffs' cite *Independent Warehouse* to support the notion that the "economic loss doctrine does not apply to claims for negligent hiring,

---

[7]    *See, e.g.*, *Longenecker-Wells*, 658 Fed. App'x at 661-62 (applying the doctrine to a negligence claim related to an illegal data breach that only caused economic harm); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 177-78 (3d Cir. 2008) (holding that the doctrine barred plaintiff's negligence claims arising out of a theft of credit card information where plaintiff suffered only economic harm); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (applying the doctrine in the context of UTPCPL cases); *Enslin v. Coca-cola Co.*, 136 F. Supp. 3d 654, 672 (E.D. Pa. 2015) (applying the economic loss doctrine to bar a negligence claim premised on the economic harm caused by the unlawful disclosure of Defendant's employees' personal identification information); *Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 WL 4072585, *8 (E.D. Pa. Sept. 2, 2008) (noting that it is well-established that the economic loss doctrine may bar claims of negligent misrepresentation (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620-21 (3d Cir. 1995)).

retention and supervision." (Doc. 77, at 22). In making such conclusion, the *Independent Warehouse* Court compared the applicability of the doctrine to the "gist of the action" doctrine. Such comparison has been made by the Third Circuit in the past, but any distinction does not provide–as *Independent Warehouse* suggests–that the economic loss doctrine is reserved to cases involving products liability. Considerable precedent, identified above, suggests the opposite. In fact, just months after *Independent Warehouse* was decided, the Third Circuit held that the economic loss doctrine applied to a negligence claim premised on an unlawful computer breach; not a products liability claim. *Longenecker-Wells*, 658 Fed. App'x at 661. For this reason, reliance *on Independent Warehouse* is misplaced.

Second, Plaintiffs cite a 1998 case from the Pennsylvania Superior Court to establish that Pennsylvania law does not limit negligent supervision claims to cases of physical injury. In *Heller v. Patwil Homes*, the court affirmed an award recovered by a Plaintiff on a theory of negligent supervision following discovery of an investment scam orchestrated by Defendant's employee. 713 A.2d at 105. Notably, the court neither mentioned nor discussed the applicability of the economic loss doctrine. *See generally, id.* Plaintiffs' suggestion otherwise is simply incorrect. More significantly, having been decided in 1998, the *Heller* Court rendered its opinion prior to a number of decisions applying the economic loss doctrine to similar actions.

Here, the economic loss doctrine applies to bar Plaintiffs' negligence claims. Plaintiffs Amended Complaint includes no reference to physical injury or property damage as required to bring a negligence claim susceptible to the economic loss doctrine. In fact, Plaintiffs concede that the only damages claimed are economic damages. Because the economic loss doctrine bars Plaintiffs' negligence claims, Count III of Plaintiffs' Amended Complaint will be dismissed with prejudice.

25

### G. Leave to Amend

Defendants contend that Plaintiffs should not be granted leave to amend the Amended Complaint and request that all claims be dismissed with prejudice. However, this Court is instructed to allow a curative amendment unless an amendment would be inequitable or futile. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008). Here, because Plaintiffs may be able to amend their pleadings to support the claims asserted, this Court will grant Plaintiffs one final leave to amend Counts I and II of the Amended Complaint. But, since Plaintiffs' negligence claims are barred by the economic loss doctrine, this Court will find that amendment would be futile. Thus, Count III of Plaintiffs' Amended Complaint will be dismissed with prejudice.

### IV. Conclusion

For the above stated reasons, Plaintiffs Amended Complaint is dismissed in its entirety. Notably, Count III will be dismissed with prejudice because the economic loss doctrine bars Plaintiffs' negligence claims.

An appropriate order follows.

October 25, 2017            /s/ A. Richard Caputo
Date                         A. Richard Caputo
                             United States District Judge