**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TIMOTHY AND ANN DOLAN, et. al.,

    Plaintiffs,

        v.

PHL VARIABLE INSURANCE
COMPANY, et. al.,

    Defendants.

CIVIL ACTION NO. 3:15-CV-01987

(JUDGE CAPUTO)

## MEMORANDUM

Presently before this Court are four (4) motions to dismiss Plaintiffs' Second Amended Complaint (Doc. 89) filed by Defendants Allianz Life Insurance Company of North America ("Allianz") (Doc. 97), North American Company For Life and Health Insurance ("North American") (Doc. 96), PHL Variable Insurance Company ("PHL") (Doc. 98), and Forethought Life Insurance Company ("Forethought") (Doc. 95) (collectively "Defendants"). Plaintiffs will be allowed to proceed against Defendants Forethought and PHL for claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiffs, however, will be unable to pursue UTPCPL claims against Allianz or North American because Plaintiffs have failed to allege that Hyduk was Allianz's agent and waived its claim against North American. Further, Count II of the Second Amended Complaint will be dismissed with prejudice because Plaintiffs have failed to allege the existence of a fiduciary relationship.

### I. Background

### A. Factual Background

The facts, as set forth in Plaintiffs' Second Amended Complaint, are as follows:

Plaintiffs Timothy and Ann Dolan, the Estate of Jean Dolan, Raymond and Elizabeth Flannery, Robert and Linda Gruner, Virginia Hetherington, and Carmen Fierro (collectively

"Plaintiffs") are alleged victims of a scheme perpetrated by a registered financial advisor, Joseph S. Hyduk ("Hyduk"), and his company BNA Financial Services ("BNA"). (Second Amended Complaint ("SAC"), at ¶¶ 4-12, 16.)

Plaintiffs allege that Hyduk targeted each Plaintiff, held himself out as an agent of the Defendants, and presented each Plaintiff with investment opportunities constructed by the Defendants. Hyduk explained to Plaintiffs that their purchase of annuities with Defendants would be a safe investment option without risk to principal. (SAC, at ¶¶ 112, 174, 265, 321.) Hyduk further explained to Plaintiffs that the minimum guaranteed return on these annuities would be one percent. (SAC, at ¶¶ 114, 186, 267, 323.) Plaintiffs allege that to convince them to purchase annuities issued by Defendants, Hyduk would often present Plaintiffs with *pro forma* statements, prepared by Defendants, that indicated Plaintiffs' projected returns. (SAC, at ¶¶ 116, 188, 269, 325.)

Soon after Plaintiffs purchased their annuities, Hyduk manipulated Plaintiffs into selling their investments for his own gain. His fraud was not complex. First, Hyduk had his clients withdraw funds from an annuity. (SAC, at ¶¶ 121, 192, 273, 329.) Defendants, after receiving a request for funds, would issue a check to the annuity holder. (SAC, at ¶¶ 122, 193, 274, 330.) While this may seem rather innocuous, these withdrawals triggered substantial fees and penalties ("surrender fees"). (*Id.*) Thus, the checks issued by the Defendants totaled an amount significantly less than the original principal invested. The Defendants retained the surrender fees. (SAC, at ¶¶ 132, 209, 281, 337.) After receiving the refund checks, instead of purchasing alternative investment products, Hyduk would keep those funds for his own benefit. (SAC, at ¶¶ 131, 208, 280, 336.)

Plaintiffs claim that Hyduk's rate of early withdrawals was unusually high and should have put Defendants on notice that Hyduk was not operating according to industry

standards[1] or in the best interest of their customers. (SAC, at ¶¶ 125, 199, 277, 333.) The withdrawals generally occurred within the first few years following the purchase of Defendants' annuities, thus causing Plaintiffs to incur substantial surrender fees in connection with these transactions. (SAC, at ¶¶ 121, 192, 273, 329.) According to Plaintiffs, Hyduk had apparent authority to act and speak for Defendants and relied on marketing materials prepared by Defendants to entice clients to purchase Defendants' products. In fact, Plaintiffs allege that they received letters directly from the Defendants that acknowledged Hyduk acted as an "agent" or "advisor." (SAC, at ¶¶ 39, 92, 210, 339.)

In sum, Plaintiffs allege that, although numerous warning signs existed, Defendants failed to conduct even minimal due diligence as to Hyduk's operations and assets. Defendants failed to audit or inquire about the investment advice Hyduk was offering to Plaintiffs and others. Defendants also neglected to maintain basic compliance mechanisms and procedures, such as comprehensive reviews and testing, employed throughout the investment advising industry to identify and prevent the type of fraud and self-dealing that allegedly occurred here.

## B. Procedural History

On October 16, 2013, Hyduk's company was raided by the Federal Bureau of Investigation. On August 4, 2014, charges were filed against Hyduk in this Court.[2]

---

[1]     Plaintiffs cite regulations promulgated by the National Association of Insurance Commissioners. (*See, e.g.*, SAC, at ¶ 125 n.6.) Defendants argue, however, that these regulations are inapposite.

[2]     *See United States v. Hyduk*, No. 3:14-cr-189 (M.D. Pa., 2014):
It was part of the scheme that HYDUK would improperly divert funds from his clients to himself without his clients' knowledge or consent. The majority of the diverted funds was from clients who intended the money to be rolled-over into different investments. HYDUK instructed them to make their checks payable to BNA Financial instead of the actual new investment company and deposited the funds into his own

Subsequently, Hyduk pled guilty to tax evasion and wire fraud. On July 30, 2015, he was sentenced to more than five years in prison.

In light of the foregoing events, on November 13, 2015, Plaintiffs filed a three-count Complaint (Doc. 1) against Defendants. Plaintiffs' Complaint was dismissed in its entirety without prejudice on November 22, 2016 due to its failure to comply with Federal Rule of Civil Procedure 9(b). Plaintiffs timely filed an Amended Complaint on December 13, 2016. The First Amended Complaint contained the following claims: (1) Count I alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Act; (2) Count II alleging a breach of fiduciary duties; and (3) Count III alleging negligence. Defendants moved to dismiss all claims, and I agreed that dismissal was warranted. (Docs. 64-67; 88). So, I dismissed Counts I and II of the First Amended Complaint without prejudice and Count III with prejudice. (Doc. 88.)

Plaintiffs timely filed a Second Amended Complaint on November 15, 2017. (Doc. 89.) Again, Defendants have moved to dismiss both Counts. (Docs. 95-98.) Defendants' Motions have been fully briefed and are ripe for review.

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting FED. R. CIV. P.

---

account and used the money for his personal benefit. . . .
Doc 1, at ¶ 3.

8(a)(2)). In certain circumstances, as discussed below, the Federal Rules of Civil Procedure require "heightened pleading" beyond that required by Rule 8. *See* FED. R. CIV. P. 9(b).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.").

### III. Discussion

### A. Compliance with Federal Rule of Civil Procedure 9

Defendants first argue that Counts I and II of Plaintiffs' Second Amended Complaint should be dismissed for non-compliance with Federal Rule of Civil Procedure 9(b). Rule 9(b) was fatal to Plaintiffs' first two complaints. Defendants contend that many of the infirmities in Plaintiffs' prior complaints were not cured in the Second Amended Complaint.

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading requirement

for claims of fraud or mistake. Specifically, the Rule requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). In other words, "[a] plaintiff alleging fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story - that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum* v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004). At bottom, Rule 9(b) requires plaintiffs "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)).

Plaintiffs have alleged a significant number of new facts about the "who" involved in this action. Specifically, the Second Amended Complaint includes a number of averments detailing the Plaintiffs' financial experience, or lack thereof, and the losses sustained by each Plaintiff. (SAC, at ¶¶ 19-31.) This new information is added to a considerable amount of information that remains from earlier iterations of the Complaint such as the account numbers assigned by each Defendant to the annuities purchased by the Plaintiffs. (SAC, ¶¶ 96, 161, 257, 310.) Additionally, Plaintiffs have alleged facts which connect Hyduk and the Defendants. (SAC, ¶¶ 92, 210, 339.) Plaintiffs have also clearly pled the subject matter–the "what"–of the alleged fraud: the annuities sold by the Defendants. Again, Plaintiffs have identified these annuities by the account number prescribed by each Defendant. (SAC, ¶¶ 96, 161, 257, 310.) There is no question that Defendant is on notice

of the annuities at issue.

With respect to "how" the fraud was perpetrated, Plaintiffs have detailed how they believe Hyduk was running the fraud. First, Hyduk would convince a Plaintiff to purchase a risk-free annuity. (SAC, at ¶¶ 112, 174, 265, 321.) Notably, he neglected to explain to the Plaintiff that he would be subject to surrender fees if they terminated the annuity before a given date. Having convinced a Plaintiff to purchase the annuity, he would then attempt to have the Plaintiff "roll-over" the annuity to another insurer-Defendant. (*See, e.g.*, SAC, at ¶¶ 121, 192, 273, 329.) During that process, Defendants would release the invested funds to the annuity holder, less the withheld surrender fees. (SAC, at ¶¶ 122, 193, 274, 330.) Hyduk would then receive the funds from the annuity holder for reinvestment, but instead of reinvesting those funds he would use them to support his personal spending habits. (SAC, at ¶¶ 36, 131, 208, 280, 336.) In addition to these facts, the Second Amended Complaint adds at least two relevant allegations: (1) Plaintiffs only acted on Hyduk's advice to roll-over the funds after they received letters from the Defendants[3] setting forth Hyduk as "agent" or "advisor;" and (2) the existence of records in the control of the FBI that document the statements made by Hyduk. (SAC, at ¶¶ 92, 210, 339; 82-84.) Even accepting the flaws of the First Amended Complaint as noted in my October 25, 2017 Memorandum, it is clear that Plaintiffs have provided a significant amount of information regarding the fraud orchestrated by Hyduk.

As I discussed at length in the October 25, 2017 Memorandum, the allegations related to the "when" and "where" of the alleged fraud are lacking. This has not changed. In particular, Plaintiffs never allege precisely when Plaintiffs were advised by Hyduk, or the

---

[3] No such allegation was made against Defendant Allianz. For this reason, Plaintiffs will be unable to construe Hyduk as Allianz's agent, and thus will be unable to support a claim against Allianz.

dates when annuities were purchased or surrendered.[4] Additionally, there is little information in the Second Amended Complaint that concerns where the fraud took place. However, Plaintiffs have provided Defendants with the account numbers for the relevant annuities. This information would likely allow Defendants to comb their records to create an exact time line of events associated with the sale of a given annuity and Plaintiffs' subsequent withdrawal of funds.

While I acknowledge some of the flaws identified with the First Amended Complaint remain uncorrected, I must be cognizant of the fact that Rule 9 does not require Plaintiffs to allege facts that are not within their control and would only be uncovered during discovery. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (explaining that "courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" (citing *Shapiro v. UJB Fin Corp.*, 964 F.2d 272, 285 (3d Cir. 1992)). There is no question that alleging the "date, place and time" of alleged conduct is preferred, but Plaintiffs are "free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville*, 742 F.2d 786, 791 (3d Cir. 1984); *see also Northwest Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 Fed. App'x 96, 102 (3d Cir. 2017). The Second Amended Complaint has done just that; it offers additional: background on each Plaintiff; facts supporting an agency relationship between Hyduk and the Defendants; and allegations that evidence exists to further detail Hyduk's representations.

Because of the additional allegations contained in the Second Amended Complaint, I find that Defendants are on notice of the conduct that underpins the claims of fraud raised

---

[4]  Plaintiffs do set forth a time line of events which resulted in Hyduk selling Plaintiff Jean Dolan a Forethought annuity. (SAC, ¶¶ 164-168.)

8

by the Plaintiffs.[5] Therefore, Plaintiffs have satisfied the pleading requirements of Rule 9(b).

## B.     Defendants' Vicarious Liability for the Actions of Hyduk

Next, I must decide whether Plaintiffs have sufficiently alleged that Hyduk is Defendants' agent.

(1)     Defendants PHL, Forethought, and North American:

Contrary to Plaintiffs' suggestion, I am able to evaluate whether they have sufficiently alleged an agency relationship in the Second Amended Complaint. Plaintiffs argue that discovery must follow when an agency relationship is alleged, and I agree. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x. 803, 808 (3d Cir. 2003) (citing *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977)). Of course, this does not mean that a plaintiff survives a motion to dismiss if they offer nothing more than conclusory averments or unrelated statements to allege an agency relationship. *See Jurimex*, 65 Fed. App'x. at 808 (noting that plaintiffs are required to "allege facts sufficient to allow [an agency relationship] to be proven at trial, but is not required to have extensive proof at the complaint stage."); *see also My Space Preschool & Nursery, Inc. v. Capitol Indem. Corp.*, No. 14-2826, 2015 WL 1185959, at *4 (E.D. Pa. Mar. 13, 2015). So, Plaintiffs must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" that Hyduk was Defendants' agent. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see Silfee v. Automated Data Processing, Inc.*, No. 15-23, (M.D. Pa. Sept. 15, 2016) (Caputo, J.), *rev'd on other grounds*, 696 Fed. App'x 576 (3d Cir. 2017).

---

[5]     Remember, the Third Circuit has expressed a hesitancy to dismiss claims premised on non-compliance with Rule 9(b) when a plaintiff would be unable to allege the required particularity absent discovery. *See Grant v. Turner*, 505 Fed. App'x 107, 112 (3d Cir. 2012). The existence of audio recordings that document exactly how the fraud was perpetrated suggests that discovery could be extremely beneficial in clarifying the issues before me.

The Pennsylvania Supreme Court has held that an insurance broker is generally considered the agent of the insured when the insured employs a broker to choose an insurer. *Transgaurd Ins. Co. of Am. Inc., v. Hinchey*, 464 F. Supp. 2d 425, 431 (M.D. Pa. 2006) (citing *Taylor v. Crowe*, 282 A.2d 682, 683 (Pa. 1971)). To be clear, this does not mean that a broker may *never* be considered an agent of an insurer. "[I]n some situations, a broker can be considered an agent for the insured in some respects and an agent for the insurer in other respects." *Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 514 (M.D. Pa. 1998) (Caputo, J.). "The agency status of a broker depends on the relationship between the broker and the insured as well as the broker and the insurer." *Id.* A broker will likely be considered an agent of the insurer if there is evidence that the broker had the insurers "apparent, if not actual authority." *Id.* Apparent authority exists when circumstances cause "persons with whom the agent deals to reasonably believe the agent has authority." *AT&T v. Winback*, 42 F.3d 1421, 1439 (3d Cir. 1994).

Plaintiffs' First Amended Complaint was dismissed, in part, because it did not contain sufficient allegations to support the existence of an agency relationship. There, Plaintiffs relied heavily on conclusory allegations, agreements between Defendants and Hyduk, and marketing materials provided to Plaintiffs by Hyduk. I found that these allegations were insufficient to establish an agency relationship at even this early this stage of litigation because: (1) conclusory allegations are not considered when assessing a motion to dismiss; and (2) "[a]gency contracts alone are not sufficient to establish agency between a broker and an insurer." *Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, No. 10-1875, 2012 WL 4506059, at *8 (M.D. Pa Apr. 26, 2012) (citing *Kairys v. Aetna Cas. & Sur. Co.*, 461 A.2d 269, 273 (Pa. Super. Ct. 1983)), *report and recommendation adopted*, 2012 WL 4504600 (M.D. Pa Oct. 1, 2012) (Connor, J).

While many of the problems[6] with the First Amended Complaint remain, the Second Amended Complaint adequately pleads an agency relationship such that Plaintiffs are owed discovery to determine the extent of the relationship between Defendants and Hyduk. Specifically, Plaintiffs have pled that Defendants sent letters directly to Plaintiffs, which identified Hyduk as "Agent" or "Advisor." (SAC, at ¶¶ 39, 92, 212, 339; Ex. B; Ex. I.) In at least one instance, the names of both a Plaintiff and Hyduk appeared under the title "Contract Information." (SAC, at Ex. B.) The documents received by Plaintiffs–printed on Defendants' letterhead–contain Hyduk's name, address and phone number. (SAC, at Ex. B; Ex. I.) Notably, This is the first time Plaintiffs have pled that any document was ever sent directly from Defendants to Plaintiffs acknowledging a relationship with Hyduk.[7] It is certainly plausible that an individual receiving such a document would reasonably conclude Hyduk had some authority to bind Defendants. *Winback*, 42 F.3d at 1439. For this reason, Plaintiffs have sufficiently pled an agency relationship able to survive the instant Motion to Dismiss.

(2)    Defendant Allianz:

With respect to Defendant Allianz, Plaintiffs have not added a single relevant, non-conclusory averment to the Amended Complaint. (*See* SAC, at Ex. A, ¶¶ 254-306.) Stated

---

[6]    The Second Amended Complaint, like the First Amended Complaint, is full of conclusory averments related to an agency relationship. (*See, e.g.*, SAC, at ¶¶ 59, 69, 72, 73, 120, 159, 163, 213, 253, 255, 282, 308, 347.) These averments are not considered during this analysis. Additionally, the Second Amended Complaint still relies on marketing materials, *pro formas*, and agency agreements to support a finding of agency. (*See, e.g.*, SAC, at ¶¶ 41, 51, 54, 56, 57, 107, 116, 188, 272,.) Again, those allegations are insufficient.

[7]    All previous allegations suggested that the documents were relayed from the Defendants to Hyduk, and then from Hyduk to Plaintiffs. Now, Plaintiffs allege that Defendants acknowledged a relationship with Hyduk in a direct communication with the Plaintiffs.

differently, the averments I rejected as insufficient to properly allege an agency relationship remain, unamended. Thus, I will not diverge from my earlier conclusion: Plaintiffs have failed to adequately plead an agency relationship existed between Hyduk and Allianz.

**C.     Plaintiffs' UTPCPL Claim**

(1)     Defendants PHL and Forethought:

Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair or deceptive acts or practices. To successfully plead a claim under the UTPCPL "a plaintiff must allege one of the unfair or deceptive trade practices set forth in 73 P.S. § 201-2(4)(I)-(xxi)." *Freeny v. Disston Manor Personal Care Home*, 849 A.2d 590, 597 (Pa. Super. Ct. 2004), *appeal denied*, 581 Pa. 691 (2004). Of course, identifying one of the various unlawful practices detailed in the UTPCPL is not sufficient. Plaintiffs must also allege elements common to all UTPCPL claims: justifiable reliance, causation, and an ascertainable loss. *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006); *see also Huu Nam Tran. v. Metro. Life Ins. Co.*, 408 F.3d 130, 139-140 (3d Cir. 2005); *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 467 (E.D. Pa. 2009).

Defendants contend that Count I of Plaintiffs' Second Amended Complaint should be dismissed because Plaintiffs fail to allege: (1) a false statement or misrepresentation made by Defendants; and (2) that they justifiably relied upon Defendants' supposed misrepresentation.

*(I)      Common Elements of a UTPCPL Claim: Justifiable Reliance[8]*

Defendants argue that the allegations contained in the Second Amended Complaint are insufficient to establish justifiable reliance because a plaintiff does not establish justifiable reliance "if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 12 (Pa. Super. Ct. 2004). More simply, Defendants argue that since Plaintiffs signed a contract which disclaimed any misrepresentation made by Hyduk, reliance on those misrepresentations were not justified.[9] I disagree.[10]

---

[8]     Defendant Forethought briefly argues that Plaintiffs "cannot establish that alleged misrepresentations caused them to suffer an ascertainable loss" because "Plaintiffs never allege that the annuities were inappropriate for them." (Doc. 99, at 17.) This is simply incorrect. Plaintiffs are not required to allege the annuities were inappropriate. Rather, they must allege that the misrepresentations caused an ascertainable loss. Plaintiffs have made such an allegation.

[9]     *See, e.g., Yocca*, 578 Pa. at 502 ("[B]y signing the . . . Agreement, which contained an integration clause stating that the terms of the Agreement superceded all of the parties' previous representations, . . . [Plaintiffs] explicitly disclaimed reliance on any such representations."); *Diodata v. Wells Fargo Ins. Servs., USA*, 44 F. Supp. 3d 541, 567 (M.D. Pa. 2014) ("a party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations." (citations omitted)); *Toy*, 863 A.2d at 12 (explaining that a Plaintiff is "required to use his senses and cannot recover if he blindly relies upon a misrepresentation" that is obviously false).

[10]    *See Dilworth v. Metro. Life Ins. Co.*, 418 F.3d 345, 353 (3d Cir. 2005) ("[I]t is not unreasonable for insureds to rely on the representations of the insurer's agent rather than on the contents of the insurance policy to understand the scope or cost of her coverage."); *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994) (noting that in Pennsylvania "we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy."); *Toy*, 863 A.2d at 12 (explaining that an "insured would not be

I find that Plaintiffs have properly alleged justifiable reliance to survive the instant Motion. Plaintiffs explain in the Second Amended Complaint that they are unsophisticated investors who took the advice of Hyduk before and after signing annuity contracts with the Defendants. *See Dilworth*, 418 F.3d at 353 ("[i]t is not unreasonable for insureds to rely on the representations of the insurer's agent rather than on the contents of the insurance policy to understand the scope or cost of her coverage."); *Piper v. Am. Nat'l Life Ins. Co.*, 228 F. Supp. 2d 553, 560 (M.D. Pa. 2002) ("Whether reliance on misrepresentation is justified is dependant in part on subjective factors such as the respective intelligence and experience of the parties."). They relied on the statements made by Hyduk, suitability forms completed by Hyduk, *pro formas* provided by Hyduk bearing the Defendants' branding, and Defendants' generic marketing materials.[11] (*See*, *e.g.*, ¶¶ 160, 167, 171, 174, 188,190.) At this stage of the litigation, such allegations are sufficient. Further, justifiable reliance is generally a question of fact not typically decided upon a motion to dismiss. *See Toy*, 863 A.2d at 12.

Again, at this stage of the litigation, I find that Plaintiffs have adequately alleged justifiable reliance.

> (ii)    Plaintiffs allege a claim under 73 P.S. § § 201-(2)(4)(ii), (v)

Defendants contend that the Second Amended Complaint fails to allege a claims under 73 P.S. § § 201-2(4)(ii), (v). In layman's terms these sections of the UTPCPL "prohibit

---

barred from asserting that he justifiably relied upon the insurance agent's misrepresentations about the coverage afforded under the policy even though the insured admitted that he failed to read the language of the policy."); *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1141 (Pa. Super. Ct. 2003) (concluding that it is "not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy.").

[11]    Plaintiffs have also alleged the existence of audio recordings that document the exact representations made by Hyduk.

false advertising." *Baker*, 440 F. Supp. 2d at 412. Section 201-2(4)(v) of the UTPCPL provides that it is an "unfair or deceptive act" to "[r]epresent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." "In order to set forth a claim under this provision of the UTPCPL, a plaintiff must allege: (1) 'a defendant's representation is false; (2) 'it actually deceives or has a tendency to deceive'; and (3) 'the representation is likely to make a difference in the purchasing decision.'" *Seldon*, 647 F. Supp. 2d at 466 (citing *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999)). With respect to a claim under § 201-2(4)(ii), a plaintiff must only allege facts that suggest the "defendant's representations were likely to cause confusion or misunderstanding." *Baker*, 440 F. Supp. 2d at 412.

        (a)     Section 201-2(4)(v)

Defendants' earlier motion to dismiss this claim was granted because I found that Plaintiffs failed to allege a misrepresentation made by Defendants. Here, however, circumstances have changed: Plaintiffs have adequately pled an agency relationship between the Defendants and Hyduk. This means that allegations related to Hyduk's misrepresentations my be imputed to the Defendants.[12]

------

[12]     It is true that some courts have concluded that no claim under the UTPCPL may be premised on a theory of derivative liability. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013); *Hawk v. Carrington Mortg. Servs.*, No. 14-1044, 2016 WL 4414844, at *6 (M.D. Pa. June 23, 2016), *report and recommendation adopted,* 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016); *McMaster v. CIT Grp./Consumer Fin., Inc.*, No. 4-339, 2006 WL 1314379, at *4 (E.D. Pa. May 12, 2006). This conclusion, however, is overly broad. Pennsylvania's "imputation doctrine," explains that "principals generally are responsible for the acts of agents committed within the scope of their authority." *Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP.*, 605 Pa. 269, 302 (2010). This doctrine applies with equal force to the UTPCPL. *See Belmont*, 708 F.3d at 499-

Hyduk made a number of allegedly false representations. For example, Hyduk regularly claimed that the investments offered by Defendants were "without any risk to principal," and that the investments were subject to minimum guaranteed returns despite possible surrender or withdrawal fees. (SAC, at ¶¶ 112, 174, 265, 321.) As evidenced by the fact that Defendants lost significant amounts of money, it is clear that these statements were false. (SAC, at ¶¶ 19-32.) Further, I find–and Plaintiffs have pled–that these statements deceived Plaintiffs into purchasing Defendants' products. Thus, Plaintiffs have sufficiently pled the elements of a claim under 73 P.S. § 201-(2)(4)(v).

(b)     Section 201-2(4)(ii)

Remember, in addition to the normal pleading requirements for a UTPCPL claim, a plaintiff alleging a claim under § 201-2(4)(ii) must plead that the defendants "representations were likely to cause confusion or misunderstanding." *Baker*, 440 F. Supp. 2d at 412; *accord* 73 P.S. § 201-2(4)(ii). Here, Plaintiffs do just that. Specifically, Plaintiffs claim that Defendants caused "confusion or misunderstanding" regarding the safety of the annuities at issue. Hyduk–who is being construed as Defendants' agent–repeatedly informed Plaintiffs that the annuities were "risk-free" investments. Plaintiffs have also pled that Hyduk advised them to withdraw funds, which in turn triggered substantial surrender fees. It is plausible that a plaintiff in this situation would be confused. For this reason, I find that Plaintiffs' Second Amended Complaint adequately alleges a claim under 73 P.S. § 201-2(4)(ii).

(iii)     *Plaintiffs allege a claim under 73 P.S. § 201-2(4)(iii)*

---

500. Since Plaintiffs have sufficiently pled an agency relationship existed between the Hyduk and the Defendants, the broad prohibition against derivative liability is inapplicable. *See id.*; *see also Behr v. Fed. Home. Loan Mortg.*, No. 14-291, 2015 WL 5123656, at *11 (W.D. Pa. July 29, 2015), *report and recommendation adopted*, 2015 WL 5132519 (W.D. Pa Sept. 1, 2015).

Next, Defendants argue that Plaintiffs have failed to allege a claim of misrepresentation of association under 73 P.S. § 201-2(4)(iii). A misrepresentation of association is defined as an act "causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another." 73 P.S. § 201-2(4)(iii). To state a claim under 73 P.S. § 201-2(4)(iii) a plaintiff must allege facts that suggest Defendants engaged in conduct that might lead to confusion about a defendant's "affiliation, connection, or association with . . . another." *Id.*

Unlike earlier iterations of Plaintiffs' Complaint, the Second Amended Complaint alleges the existence of direct communications between the Defendants and the Plaintiffs. (SAC, at ¶¶ 92, 210, 339.) As previously discussed, these communications acknowledged Defendants affiliation with Hyduk. It is true that these direct communications originated after Plaintiffs purchased the annuities, however, it is plausible that these communications confused Defendants' affiliation with Hyduk such that Plaintiffs were comfortable taking his advice. Since Defendants authored these communications, I also find it plausible to believe that Defendants caused the confusion that ultimately led to Plaintiffs' loss. Thus, Plaintiffs have sufficiently alleged a claim under 73 P.S. §§ 201-2(4)(iii).

*(iv)  Plaintiffs allege a claim under 73 P.S. § 201-(2)(4)(xxi)*

Finally, Defendants dispute whether Plaintiffs have alleged a claim under the UTPCPL's catch-all provision, 73 P.S. § 201-2(4)(xxi). This provision of the UTPCPL prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). Plaintiffs' claim sounds in fraud and requires not only pleading compliant with Federal Rule of Civil Procedure 9(b), but requires Plaintiffs plead the common law elements of fraud. *See Seldon*, 647 F. Supp. 2d at 469; *Piper*, 228 F. Supp. 2d at 560. The common law elements of fraud are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce

action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result." *Piper*, 228 F. Supp 2d at 560.

First, it is clear that Plaintiffs have alleged a misrepresentation of material fact. As discussed at length, Plaintiffs allege that Hyduk[13] explained that the annuities at issue were "risk-free" investments. That, however, was not the case. It is plausible that such a statement not only encouraged Plaintiffs to purchase the annuities, but also to withdraw funds from the annuities upon Hyduk instruction. *See Pekular v. Eich*, 513 A.2d 427, 433 (Pa. Super. Ct. 1985) (holding that an insurer's agent who "knowingly and purposefully *did not explain*" the negative aspects of the plan "unquestionably" fell within the UTPCPL's "expansive language.") Thus, the first common law element of fraud has been pled. Second, there is no question that Plaintiffs have pled that Hyduk intended to "deceive, manipulate, or defraud" them. *Am. Diabetes Ass'n v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 881 n.24 (E.D. Pa. 2016 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). In other words, Plaintiffs have properly pled scienter. Third, Plaintiffs allege that Hyduk, acting as Defendants' agent, failed to properly inform them of the costs associated with surrendering an annuity in order to effectuate his fraud. It is plausible to conclude that Hyduk withheld this information to ensure Plaintiffs would act. This satisfies the third element. Fourth, as previously discussed, Plaintiffs have pled that they justifiably relied on Hyduk's representations. Finally, Plaintiffs have also alleged losses proximately caused by the misrepresentations made by Hyduk.

Therefore, Plaintiff has sufficiently pled a claim under 73 P.S. §§ 201-(2)(4)(xxi).

(2)    Defendant North American:

In its Brief in Support for its Motion to Dismiss, North American argued that Plaintiffs

---

[13]    Again, the imposition of derivative liability in this case is currently appropriate. *See supra* note 9.

18

failed to allege a claim under the UTPCPL against its company. (Doc. 101, at 17-20.) Plaintiffs did not oppose this position in their Brief in Opposition to North American's Motion to Dismiss. (*See generally* Doc. 108.) By failing to respond to North American's argument, that portion of Defendant's Motion to Dismiss is deemed unopposed.[14] *See* M.D. Pa. L.R. 7.6. So, Plaintiffs' UTPCPL claim against the company will be dismissed with prejudice. *See D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999); *see also K.E. v. Dover Area Ach. Dist.*, No. 15-1634, 2017 WL 4347393, at *10 (M.D. Pa. Sept. 29, 2017) (Connor, C.J.); *Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344635, at *4 (M.D. Pa. Apr. 8, 2011); *Lada v. Delaware Cnty. Cmty. Coll.*, No. 08-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Mussari v. Jermyn Borough*, No. 07-948, 2007 WL 3231800, at *2 (M.D. Pa. Oct. 31, 2007).

> (3)    <u>Defendant Allianz:</u>

As compared to the First Amended Complaint, Plaintiffs have pled no additional facts about Allianz's participation in Hyduk's fraudulent scheme. (SAC Ex. A, at ¶¶ 254-336.) For that reason, I explained that Hyduk will not be considered an agent of Allianz when analyzing Allianz's Motion to Dismiss. This means that the averments I rejected as insufficient to properly allege a UTPCPL claim remain, unamended. Therefore, I will not diverge from my earlier conclusion: Plaintiffs failed to adequately plead a UTPCPL claim against Allianz.

---

[14]    It is true that Plaintiffs did, albeit in passing, discuss a theoretical UTPCPL claim. (See Doc. 108, at 10.) Certainly, however, Plaintiffs never responded to the arguments raised by North American. For example, Plaintiffs never responded to North American's position that Plaintiffs failed to plead justifiable reliance on a material misrepresentation; a fundamental element of any UTPCPL claim.

Plaintiffs' UTPCPL claim against Allianz will be dismissed with prejudice.

**D.    Count II: Breach of Fiduciary Duty**

Defendants contend that Count II of Plaintiffs' Second Amended Complaint should be dismissed because Plaintiffs failed to allege that Defendants entered a fiduciary or confidential relationship with any given Plaintiff, and therefore no fiduciary duty was owed. Defendants are correct.

In order to allege a breach of fiduciary duty, "a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendants." *Baker*, 440 F. Supp. 2d at 414 (citing *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005); *see Mifflinburg Tel., Inc. v. Criswell*, No. 14-0612, 2017 WL 4310187, *26 (M.D. Pa. Sept. 28, 2017). In the insurance context, contracts give rise to a fiduciary relationship under special circumstances indicating "overmastering influence." *See Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (analyzing Pennsylvania law). "[T]he critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on the one side and 'weakness, dependence, or trust, justifiably reposed' on the other side." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. Ct. 2002) (citing *Basile v. H&R Block*, 777 A.2d 95,101 (Pa. Super. Ct. 2001).

I explained in my last Memorandum that Plaintiffs failed to plead the existence of a fiduciary duty. Specifically, I noted that Plaintiffs alleged no "special or unusual facts" that would indicate an "overmastering influence," and thus a fiduciary relationship. The Second Amended Complaint does not alter that analysis. Here, Plaintiffs continue to rely on the facts as pleaded in the First Amended Complaint and an inapposite case decided in the

Lackawanna Court of Common Pleas.[15] Because neither the facts pled nor the relevant law has changed, I will refer the parties back to my October 25, 2017 Memorandum. For the reasons set for forth in that Memorandum, Count II of Plaintiffs' Second Amended Complaint will be dismissed with prejudice.

### IV. Conclusion

For the reasons stated above, Plaintiffs will be able to proceed against Defendants PHL and Forethought for violations of the UTPCPL, but the UTPCPL claims alleged against Defendants North American and Allianz will be dismissed with prejudice. Further, Count II of the Second Amended Complaint will be dismissed with prejudice.

An appropriate order follows.


 April 6, 2018                                                    /s/ A. Richard Caputo
Date                                                             A. Richard Caputo
                                                                 United States District Judge

---

[15]     Plaintiffs continue to rely on *Beecham v. American Life & Cas. Ins. Co.*, 63 D. & C. 4.th. 52, 64-65 (C.C.P. Lackawanna 2003). "In *Beecham*, the court held that a fiduciary relationship exists between an annuity carrier and the beneficiaries of the annuity. While this case clearly supports Plaintiffs' position, it will not be followed here for two reasons. First, in rendering its unpublished decision, the *Beecham* Court did not cite a single authority to support the contention that a fiduciary relationship exists simply because an annuity is involved. Second, case law within this District has suggested the opposite. *See Hatch*, 2006 WL 3325636, at *4-5; *see also Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 WL 4072585, at * 7 (E.D. Pa. Sept. 2, 2008)." (*Doc.* 87, October 25, 2017 Memorandum.)